SIEGEL v. DETROIT CAB CO.

1. MOTOR VEHICLES—NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries resulting in the death of a pedestrian struck by defendant's taxicab while crossing a public street, conflicting testimony as to the rate of speed at which the taxicab was traveling, *held*, to present a question for the jury as to defendant's negligence.

2. SAME—PERSON ABOUT TO CROSS STREET SHOULD LOOK.

Ordinary care requires that a person about to cross a street in a busy section of a city should look before attempting to cross.

3. SAME—CONTRIBUTORY NEGLIGENCE—TRIAL—INSTRUCTIONS—DUTY TO LOOK TO LEFT AFTER PASSING CENTER OF STREET.

An instruction that there is no duty at common law imposed upon a pedestrian who has passed the center of the street to look in the direction to his left where vehicles might be approaching on the wrong side of the street, and that he has a right to assume, under the circumstances, that vehicles will obey the law and be on the proper side of the street, *held*, not error, where the proof shows that he was struck when several feet beyond the center of the street.

4. EVIDENCE—MOTOR VEHICLES—TESTIMONY AS TO DISTANCE WITHIN WHICH CAR COULD BE STOPPED ADMISSIBLE.

In an action for injuries resulting in the death of a pedestrian struck by defendant's taxicab while crossing a public street, testimony by drivers of similar taxicabs that if the brakes were in good condition when being driven 12 miles an hour the car could be stopped within two feet on a dry pavement, *held*, admissible.

5. MOTOR VEHICLES—NEGLIGENCE—AFTER-DISCOVERED NEGLIGENCE.

Where the driver of defendant's taxicab testified that he first saw deceased 18 or 20 feet in front of him, that he was driving 12 or 13 miles an hour, that his brakes were in good condition, and that he could stop within about 10 feet, the testimony of drivers of similar cars that under such conditions, from tests made by them, the car could be stopped within two feet, *held*, to justify submitting to the jury the question of after-discovered negligence.

6. Death—Damages—Pain and Suffering—Excessive Verdict.

>  A verdict for $8,000 for injuries resulting in the death of a healthy man 40 years of age, earning about $50 a week, and having a life expectancy of 28.18 years, cannot be said to be excessive, where it included an allowance for pain and suffering.

> North, C. J., and Fellows and Wiest, JJ., dissenting.

Error to Wayne; Webster (Arthur), J. Submitted January 10, 1929. (Docket No. 59, Calendar No. 34,070.) Decided June 3, 1929. Rehearing denied September 4, 1929.

Case by Ella Siegel, administratrix of the estate of Fred Siegel, deceased, against Detroit Cab Company, a Michigan corporation, for personal injuries resulting in the death of plaintiff's decedent. From a judgment for plaintiff, defendant brings error. Affirmed.

*Sol. Blumrosen,* for plaintiff.

*Groesbeck, Sempliner & Kelly,* for defendant.

Sharpe, J. Cass avenue in Detroit runs north and south, and is 50 feet in width from curb to curb. Henry street crosses it at right angles. There is a single street car track on it. The pavement was dry. Plaintiff's decedent, while crossing Cass avenue from east to west, in a diagonal direction, a little distance from the cross-walk at the intersection, at about 3 o'clock in the afternoon, was struck and injured in the left arm by a cab owned by defendant and driven towards the north on Cass avenue by one of its drivers. Blood poisoning set in, and he died about a week later. Plaintiff, his widow, as administratrix, here seeks to recover the damages sustained by the estate, due to such injury and death. She recovered a verdict for $14,000, which, on motion for

a new trial, was reduced to $8,000, and, on remittitur being filed for the excess, a judgment was entered in her favor for that amount. Defendant seeks review by writ of error.

The assignments present the following questions:

1. Negligence of defendant.
2. Contributory negligence of deceased.
3. After discovered negligence.
4. Proof of damages.

1. *Negligence of Defendant.* One of plaintiff's witnesses, who first saw the cab when it was within 12 or 15 feet from the deceased, testified that it was traveling "between 25 and 30 miles per hour." While on direct examination defendant's driver testified that he was not driving faster than 12 or 13 miles an hour, on cross-examination he was asked: "Will you say you were not going faster than 12?" and answered, "I will set no speed limit at all on it." A further question was asked: "At the time of the accident how fast was your car going?" and answered, "I don't know." A passenger in the car, called by defendant, testified that the car was going "about 20 or 25 miles an hour, 15 or 20 miles an hour, not more than that." It appears that the handle of the door was broken off in the collision and deceased's arm badly lacerated. A question for the jury was thus presented.

2. *Contributory Negligence of Deceased.* Ordinary care requires that a person about to cross a street in a busy section of a city should "look before attempting to cross." *Deal* v. *Snyder,* 203 Mich. 273, 275. The trial court so instructed the jury. He also said to them:

"But if a person walks out into a street and passes the center of the street, there is no duty at common law imposed upon him to look in the direction to his

left where vehicles might be approaching on the wrong side of the street. * * * He has a right to assume under those circumstances that the vehicles will obey the law and be on the proper side of the street.''

There was proof that deceased was struck when he was several feet beyond the center of the street. We find no error in the instruction given when applied to the testimony submitted.

3. *Subsequent Negligence.* Defendant's driver testified that he saw deceased when he ''came out of the store and dived across the street;'' that when the deceased was ''about five feet from the curb, I tried my best to slow down;'' that when he saw deceased did not stop he put on his brakes and ''swerved the car directly away from him as hard as I could;'' that deceased ''was going faster than I could walk and I can walk pretty fast.'' He further testified that when he first saw deceased he was 18 or 20 feet from the front of the car, and that he was not driving faster than 12 or 13 miles an hour; that his brakes were in good condition, and that he could stop the taxicab within about 10 feet.

The plaintiff produced two witnesses, one the owner and driver of a taxicab, and the other a driver, who, from tests made by them with a similar car, testified that if the brakes were in good condition when being driven 12 miles an hour the car could be stopped within 2 feet when on a dry pavement. This testimony was admissible. Under it the court was warranted in submitting the question of after-discovered negligence to the jury. *Kelley* v. *Keller,* 211 Mich. 404. We find no error in the instruction given relative thereto. A different question was presented in *Barriger* v. *Ziegler,* 241 Mich. 83, relied on by defendant.

4. *Proof of Damages.* The deceased was engaged in the express and cartage business at the time of his injury. He was 40 years of age, and in good health. The plaintiff, who was somewhat familiar with his business, testified that in her "best judgment" his earnings were $50 per week. She produced some of his books, but they were not kept in such a way that any information could be obtained from them. The doctor at the hospital where he was taken testified that he "appeared to be suffering pain." His probability of life was 28.18 years. The proof on the question of damages was not at all satisfactory. But, in view of the reduction of the verdict from $14,000 to $8,000, as required by the trial court as a condition to his denial of the motion for a new trial, we feel constrained to hold that there was some proof of damages and that the amount as reduced cannot be said to be an excessive allowance to an estate for the pain and suffering and the loss of earnings of a man in good health who had a probability of life exceeding 28 years.

The judgment is affirmed.

Fead, Clark, McDonald, and Potter, JJ., concurred with Sharpe, J.

North, C. J. (*dissenting*). I am unable to concur in the opinion of Mr. Justice Sharpe. The defense mainly urged was that of contributory negligence. As bearing upon that phase of the case, and in addition to the facts recited in Justice Sharpe's opinion, the following should be noted: The man who was injured was 40 years of age and in full possession of all his faculties. Upon leaving a grocery store on the east side of Cass avenue he stepped off the curb and started to cross the pavement at a point

about 25 feet north of the cross-walk on the northerly side of Henry street. He walked approximately 30 feet in a northwesterly direction to the point of accident. He did not come in contact with any portion of the front of the cab, but walked into the side of it or so close to it that the door handle caught his left arm when he was from three to six feet past the center line of Cass avenue. The cab stopped within its length after the accident. Nothing intervened near the point of collision which tended in any way to interfere with an unobstructed view of traffic conditions either north or south on Cass avenue. Nothing occurred to distract the attention of Mr. Siegel.

There were five eyewitnesses. Two of these were produced at the trial by plaintiff and three by the defendant. On the question of the negligence of the cab driver (which for the present purpose must be admitted) there is some decided conflict in the testimony of these five witnesses; but there is no very material conflict in their statements of the conduct of the deceased. Each of the five witnesses was in a position to make a fairly minute observation of what was done by this pedestrian, but not one of them testified that Mr. Siegel looked for approaching vehicles either to his right or to his left while crossing this street. One of plaintiff's witnesses testified as follows:

"*Q*. Was he in your vision all the while?
"*A*. Yes.
"*Q*. What, if anything, did he do other than walking?
"*A*. Nothing else.
"*Q*. You saw him all the while?
"*A*. Yes.
"*Q*. As he continued, having left the curb, he continued diagonally walking right across?
"*A*. Yes, sir.

"*Q.* And you never saw him do another thing than walk diagonally across?

"*A.* No.

"*Q.* He neither slackened his speed nor increased his walk?

"*A.* No.

"*Q.* Now, still there is no traffic southbound?

"*A.* No.

"*Q.* And still there is nothing between your position and the man walking diagonally across?

"*A.* No.   *   *   *

"*Q.* When you first saw the automobile where was the gentleman?

"*A.* Well, he was about the center of the street, possibly not quite the center. The taxicab was proceeding north on Cass avenue, and when he (the driver) came to the center of Henry street, he saw that he was going to hit the man and he drove around to the left of him toward the west curb. During all of this time, the man was in my direct view. I had no trouble seeing him. The man kept right on walking.   *   *   *   I actually saw the automobile and the man come together. As I saw it, the center of the right side of the cab struck the man."

The other eyewitness produced by the plaintiff testified in substance:

"I saw the accident. It was west from the center of Cass avenue about three or four feet. The right side of the cab struck the man. After the accident, the machine was standing looking west diagonally. When I looked the cab was about even with the curb line (of Henry street). The cab was at that time in the center of Cass avenue. When I first saw the man he was about 15 feet ahead of the car and he was just about in the center of the street. The automobile then changed its course and swerved a little to the west and the man took one or two steps. It just took a few seconds and the machine hit him. No part of

the front of the automobile struck the man.  He was struck by the side of the automobile.''

With the testimony in this condition as to plaintiff's decedent's failure to look for approaching vehicles as he was crossing, the plaintiff rested her case, and the defendant moved for a directed verdict.  This motion was denied; and a similar motion was denied at the conclusion of all the proofs.  The question of plaintiff's decedent having been guilty of contributory negligence as a matter of law was again presented incident to defendant's motion for a new trial.  This phase of plaintiff's case was in no way benefited by the testimony of the three eyewitnesses produced by the defendant.  One of these testified:

''The man went in back of my car and in front of the News truck and started out on a fast walk for the other side of the street.  *  *  *  The man walked right into the side of the car on the right-hand side and hit with his left side, the left arm, and he knocked the door handle off the automobile.  *  *  * When the cab finally stopped, the front end of the cab was about 12 feet west of the center of the street. *  *  *  He (Mr. Siegel) was always looking at the ground, he did not look up; I thought that kind of peculiar.''

The above testimony was given by a disinterested witness who was seated in an automobile at the curb nearly opposite the point of accident.  His statement that Mr. Siegel ''did not look up'' is not disputed in this record.  The driver of the taxicab testified:

''He (Mr. Siegel) was in a very peculiar position, instead of walking and looking around the way he should have done, he started across the street on a part of a walk and part of a run.  When I saw him

get about five feet from the curb, I tried my best to slow down. I blew my horn first the moment I saw him diving off the curb. I blew the horn and tried to get away from him but he was going too fast for me at the time. There were cars parked at the curb and I was about three feet west of those cars at the time. When I saw that he showed no sign of stopping after I blew my horn, I put on my brakes and swerved the car directly away from him as hard as I could. * * * He did nothing but just kept on walking. He kept looking down and kept going ahead. He was going faster than I could walk and I can walk pretty fast."

The other eyewitness was the occupant of the cab, who testified:

"I was seated in the center of the back seat of the cab. * * * The accident * * * it was all done in the twinkling of an eye you might say; there was a man coming across the street. * * * He had some parcels under his arm, and he was looking right straight, his objective was to get across to the other side of the street. He was not looking north or south; just going directly across when all of a sudden the boy struck him like that."

The only fair construction that can be placed upon the testimony in this case leads inevitably to the conclusion that this man with nothing in the central portion of the street to obstruct his view or distract his attention walked directly into the side of the passing motor vehicle. The controlling proposition of law is this: With nothing to obstruct his view, impair his vision, or distract his attention, a pedestrian who walks into the side of a motor vehicle which is attempting to pass in front of him cannot be said to be free from contributory negligence notwithstanding the vehicle may be traveling on the

wrong side of the street. In the instant case it conclusively appears that if until he arrived at the center of the street Mr. Siegel had continued to make a reasonable observation for traffic approaching from his left, he would have seen defendant's cab and the accident would not have happened. It would be difficult to frame a set of facts of which it might be said with greater propriety (as was stated by Justice CLARK in *Molda* v. *Clark,* 236 Mich. 277):

"Looking and seeing nothing is of no avail when the physical facts demonstrate that, had she looked, using ordinary care, she could and must have seen defendants' approaching car, and had she so looked, and so used ordinary care, she could have avoided the injury."

The decedent should have been held guilty of contributory negligence as matter of law by the trial court. Failure to do so and submitting this question to the jury was prejudicial error.

I am also of the opinion that, as applied to the facts in this case, there was error in the following portion of the charge to the jury:

"But if a person walks out into a street and passes the center of the street, there is no duty at common law imposed upon him to look in the direction to his left, where vehicles might be approaching on the wrong side of the street. Vehicles move to the right, and if he passes the center of the street there is no duty cast upon him to look to the left, to see whether vehicles may be coming on the wrong side of the street, approaching in the wrong direction. He has a right to assume under those circumstances that the vehicles will obey the law and be on the proper side of the street. He does not have to keep his eye open for somebody who is not obeying the law in that respect."

There is no question but that a pedestrian, in determining what precaution will be necessary for his own safety in crossing a street, has a right to presume that an operator of a motor vehicle will drive in a lawful manner, but the right to indulge in this presumption cannot be distorted into a guaranty of safety to one who without excuse walks blindly into the path of a vehicle which is proceeding on the wrong side of the street, or to one who, as in this case, walks heedlessly into the side of such a vehicle. But that in effect is the statement of the law as given to the jury in this portion of the charge. The presumption that the driver will not be guilty of unlawful conduct in operating a vehicle on the street does not relieve the pedestrian from exercising the care that ordinarily prudent persons would exercise under like circumstances for their own safety. What constitutes such reasonable care should be determined in the light of the presumption that others will observe lawful regulations in their use of the streets; but that presumption does not abrogate the obligation to exercise ordinary care, including that of reasonable precaution in observing vehicles approaching from either direction. This phase of the law was especially important as applied to the instant case, because the injured pedestrian was not at a regular place of crossing, but instead was "jay walking," and the accident happened practically at the center line of the street to the left of which the driver of this cab had suddenly veered in an effort to avoid striking plaintiff's decedent. The correct rule of law was thus stated by Justice McDonald in *People* v. *Campbell,* 237 Mich. 424:

"Pedestrians in a public highway have a right to assume that the driver of an automobile will use

ordinary care for their protection, but they may not rest content on that assumption and take no care for their own safety.''

In *Halzle* v. *Hargreaves*, 233 Mich. 234, Justice WIEST stated the rule relative to a pedestrian in these words:

''Vigilance is an essential and available safeguard to life and limb in this automobile age, and reasonable care requires constant exercise of the faculty of sight while crossing a city street.''

The same rule is stated by Berry as follows:

''The duty of a pedestrian is to exercise ordinary or reasonable care for his safety. * * * A pedestrian must make reasonable use of his senses of sight and hearing, and must give heed to ordinary indications of danger, and must not walk blindly into danger, unless he expects to stand the consequences. He should look and listen to ascertain if vehicles are approaching, and must be on the alert after he starts across a busy street until he has crossed the entire roadway.'' 1 Berry on Automobiles (6th Ed.), pp. 297, 298, citing *Tolmie* v. *Woodward Taxicab Co.*, 178 Mich. 426, and *Lorah* v. *Rinehart*, 243 Pa. St. 231 (89 Atl. 967). See, also, *Fulton* v. *Mohr*, 200 Mich. 538.

However, there is testimony in this case from which it may fairly be inferred that the driver of the defendant's cab could have and should have seen Mr. Siegel in the act of crossing when he was approximately 100 feet distant from the cab. Under the driver's own testimony, he could have easily avoided the accident by slowing down more promptly than he did or by stopping his machine if necessary. For this reason, and because of other facts stated in the opinion of Justice SHARPE, the case must be held

to present a question of fact for the jury as to the subsequent negligence of defendant's driver; and for this reason it should be remanded to the circuit court for a new trial. The judgment entered should be set aside, with costs in this court to the appellant.

FELLOWS and WIEST, JJ., concurred with NORTH, C. J.