CANNING *v.* CUNNINGHAM.

1. AUTOMOBILES—NEGLIGENCE OF OPERATOR CHARGED TO OWNER—EVIDENCE.

In pedestrian's action against motorist and owner of car, evidence showed that motorist was guilty of negligence in operation of car at time and place in question and that owner was chargeable with negligence because of his ownership.

2. SAME — PEDESTRIANS — CONTRIBUTORY NEGLIGENCE — EVIDENCE —QUESTION FOR JURY.

In 89-year-old pedestrian's action against motorist for injuries sustained when struck by defendants' unlighted speeding car while midway across street 64 feet wide from curb to curb at 9 p.m. in the evening late in August, about 100 feet from a street intersection, contributory negligence, if any, of plaintiff was for jury, where evidence shows that attempt to cross at such time and place when traffic had been stopped at traffic lights nearly a block each way from where crossing was made after plaintiff had looked each way and no traffic appeared to be closer than 450 feet in direction from which defendant's car approached.

3. DAMAGES—PERSONAL INJURIES.

There is no absolute standard by which the amount of damages in personal injury cases can be measured and the amount allowed for pain and suffering must rest in the sound judgment of the trier of the facts.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am. Jur., Automobiles, § 353 *et seq.*
[2] 5 Am. Jur., Automobiles, § 454.
[2] Duty and liability to person struck by automobile while crossing street at unusual place. 14 A.L.R. 1176, 67 A.L.R. 313.
[3] 15 Am. Jur., Damages, § 72.
[4, 5] 3 Am. Jur., Appeal and Error, § 893.
[6] 15 Am. Jur., Damages, § 209 *et seq.*
[6] Excessiveness of verdict for personal injuries not resulting in death. 46 A.L.R. 1230, 102 A.L.R. 1125.

o

4. SAME—EXCESSIVE VERDICTS.
   Courts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive.

5. APPEAL AND ERROR—VERDICTS AND FINDINGS—PREJUDICE—SYMPATHY.
   The Supreme Court does not usually substitute its judgment for that of a jury in a personal injury action unless the verdict shocks the conscience or has been secured by improper means, prejudice or sympathy.

6. DAMAGES—HOSPITAL AND DOCTOR BILLS—PAIN AND SUFFERING.
   Verdict of $6,000 for plaintiff pedestrian, injured by defendant motorist, *held,* not excessive, where although plaintiff was 89 years of age, he had already incurred $880 hospital bill and $225 doctor bill, testimony indicates he will always be bed-ridden that he had suffered pain for upwards of 14 months to the time of trial, and that the verdict does not appear to have been obtained by sympathy or prejudice.

Appeal from Oakland; Hartrick (George B.), J. Submitted June 10, 1948. (Docket No. 52, Calendar No. 44,044.) Decided September 8, 1948.

Case by Robert S. Canning against Raymond C. Cunningham, Sr., and another for personal injuries sustained when hit by defendants' automobile. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*William A. Ewart* and *A. Floyd Blakeslee,* for plaintiff.

*Clark C. Coulter* (*C. W. McDonnell,* of counsel), for defendants.

SHARPE, J. Plaintiff brought an action against defendants to recover damages resulting from being struck by a motor vehicle owned by Raymond C. Cunningham, Sr., and operated by Raymond C. Cunningham, Jr.

The accident occurred on South Saginaw street in the city of Pontiac at about 9 p. m., on the evening of August 24, 1946. South Saginaw street is one of the main arterial highways in the city of Pontiac. In the center of the street are double lines of street car tracks. At the place where the accident occurred the street is 64 feet wide from curb to curb. Prospect street ends at South Saginaw street. Wilson street intersects South Saginaw street and is one block south of Prospect street. Raeburn street also intersects South Saginaw street and is one block north of Prospect street. Both Raeburn and Wilson streets have stop lights for the control of traffic.

At the time in question, plaintiff was about 89 years of age, in good health and did not need to use glasses except to read. He was walking on the sidewalk on the west side of Saginaw street and when he reached a point about 100 feet south of Prospect street, he began to cross over to the east side of South Saginaw street. As he came to the center of the street he was struck by a car owned by defendant Cunningham, Sr., and operated by defendant Cunningham, Jr. The car was unlighted and traveling at a speed of from 35 to 40 miles per hour. As a result of the accident, plaintiff was confined to the hospital from August 27, 1946, to January 13, 1947, when he was removed to his home. He incurred a doctor bill in the sum of $225 and a hospital bill in the sum of $880.

The cause came on for trial before a jury and at the conclusion of plaintiff's case, defendants made a motion for a directed verdict on the theory that plaintiff was guilty of contributory negligence as a matter of law in attempting to cross the street at the time and place in question. The court reserved decision on the motion and submitted the cause to the jury, who returned a verdict in favor of plaintiff in the sum of $6,000. Thereafter, defendants renewed

their motion for a directed verdict which was denied by the court. After judgment was entered in favor of plaintiff, defendants made a motion for a new trial upon the grounds that the verdict was excessive and was the result of sympathy and prejudice. This motion was also denied.

Defendants appeal and urge that the trial court was in error in denying their motion for a directed verdict. The facts surrounding plaintiff's entry and passing to the center of the street are as follows:

Plaintiff in substance testified that when he got to Prospect street it was dark, the street lights were on. They were on before he left downtown. He was walking on the west side of South Saginaw street. When he decided to cross the street, he looked both ways to see the traffic. Cars were stopped at Wilson street and there were no cars between him and Wilson street. He then looked to the north and couldn't see any lights "just coming from the bend down on Saginaw." He then started to cross and got just about to the center of the street when he was knocked down. A car hit him, then somebody picked him up and took him across to the station. He did not hear any horn before he was struck and he did not see any lights of any car before he was struck.

Warren Goddard, a witness called in behalf of plaintiff, testified:

"I saw the man crossing the street come across and got to the center when the other car hit him. * * * there were no headlights on it * * * the left front fender hit him and knocked him down in the street * * * the car went around 80 feet before it was finally stopped. * * * The car that struck this man went on about 80 feet."

Gus Cox, a witness called in behalf of plaintiff, testified:

"The place where the man (plaintiff) was walking
was south of the intersection of Prospect. At that
point there is a city flood lamp up above on the
street. All of the flood lights on the gas station were
on and burning at the time of the accident. The car
did not have lights on. I would be facing west. The
man (plaintiff) who was walking across the street
would be walking towards me. * * * There was
no traffic when he came out on the street and then
this traffic let loose at the light both ways, that is
at Wilson and the next street down. I am referring
to the stop light at Wilson and South Saginaw
streets, and the one north of the station, that is the
stop light just north of Prospect street. I identify
that as Raeburn. I did see an automobile come south
as this man was walking across the street. I did see
something about the automobile that attracted my
attention. This car was out ahead of the rest of the
traffic by, I would say, about five or six car lengths.
I would say the speed of the car was around 35 or
40 miles an hour. * * * This car also attracted my
attention. No lights."

John W. Emerson, a witness produced by plain-
tiff, testified that he was the electrical superintend-
ent of the city of Pontiac; that there is no traffic
light at the intersection of Prospect street and South
Saginaw street; that there is a traffic light at the
intersection of Wilson and South Saginaw streets
and one at the intersection of Raeburn and South
Saginaw streets; and that Raeburn street is one
block north of Prospect street.

The substance of all of this evidence, considered
in a light favorable to plaintiff, is that when plaintiff
started to cross South Saginaw street, he looked
south and saw cars stopped at Wilson avenue be-
cause the traffic signal was against them. These cars
were on the east side of Saginaw street, intending
to proceed in a northerly direction. Plaintiff then
looked to his left and in a northerly direction and

saw no cars. At the time he looked to the north, cars were stopped at Raeburn street waiting for a favorable traffic signal to allow them to proceed south. The distance from the point where plaintiff was crossing South Saginaw street to the place where cars were stopped at Raeburn street is 450 feet. There was no moving traffic in South Saginaw street from Wilson to Raeburn streets. Plaintiff proceeded to the center of South Saginaw street and was struck by a car traveling 35 to 40 miles per hour, without lights, and without giving any signal to plaintiff.

The evidence clearly shows that defendant Raymond C. Cunningham, Jr., was guilty of negligence in the operation of the car at the time and place in question; and that defendant Raymond C. Cunningham, Sr., as the owner of the car, can and should be charged with negligence because of such ownership.

The principal question in this case relates to the contributory negligence of plaintiff. Defendants urge that plaintiff was guilty of contributory negligence as a matter of law in attempting to cross South Saginaw at the time and place in question. They urge that *Swartz* v. *Dahlquist,* 320 Mich. 135, is directly in point with the facts in the case at bar. In the above case defendant was driving an automobile in a southerly direction on South Saginaw street in the city of Pontiac. At the place of accident the street was 80 feet wide from curb to curb. Plaintiff's decedent was slowly walking across the street in a westerly direction. Defendant was driving in the lane next adjacent to the parked cars on the west side of South Saginaw street. Plaintiff's decedent continued to walk across the street until he reached a point about midway of the west half of South Saginaw street when he was struck by defendant's automobile. We affirmed a judgment holding plain-

tiff guilty of contributory negligence as a matter of law. We there said:

"There is no testimony of confusing or distracting circumstances incident to the accident. Nor is there any testimony that plaintiff's decedent made any observation for approaching traffic or that he took any other precaution for his own safety."

In the case at bar, plaintiff made observations, saw traffic stopped on the south at Wilson street, saw no cars to the north and attempted to cross the street where it was well lighted. Plaintiff is charged with the knowledge that cars were stopped at Raeburn street, a distance of 450 feet from where he was when he made an observation for cars in that direction. If defendants' car was among other cars stopped at Raeburn street, then plaintiff cannot be charged with contributory negligence as a matter of law in attempting to cross to the center of South Saginaw street, a distance of 32 feet when cars were stopped a distance of 450 feet away. If there was negligence in so doing it presented a question of fact for a jury. The record does not show where defendants' car was when plaintiff made his observations. It may have entered South Saginaw street from Prospect street or it may have been parked on the west side of South Saginaw street. In either case plaintiff cannot be charged with contributory negligence as a matter of law in failing to see defendants' unlighted car coming from either place as plaintiff had a right to assume that any car on South Saginaw street would be lighted and would travel at a speed in accord with the ordinances regulating speed. The contributory negligence of plaintiff, if any, presented a question of fact properly submitted to the jury.

Defendants also urge that the verdict of $6,000 was excessive. The record shows that plaintiff was

about 89 years of age and was unemployed at the time of the accident. Prior to the accident, plaintiff worked in his garden and on the night of the accident he had walked from his home to the business district of Pontiac and back to Prospect street, a distance of nearly two miles.

Dr. L. Warren Gatley testified:

"I treated him (plaintiff) for a fracture of the hip. * * * His physical condition, other than this fracture, was good for his age. * * * A man 89 years of age who suffers a broken left femur and is confined to bed gets atrophied in those muscles. * * * In my opinion he will never be able to walk again. * * * At his age and this particular type of injury, pain would follow."

Plaintiff testified:

"I was confined in the hospital from August 27, 1946 until January 13, 1947. * * * I have been in bed since I returned from the hospital. * * * I can't stand up. * * * During the time I have been home and confined to my bed I suffer pain when I turn over or move. * * * I have to have attendance from my wife."

Mrs. Canning testified:

"Since he has returned from the hospital, January 13, 1947, Mr. Canning has been in my care from that time down to the present date, October 30, 1947. I have attended him absolutely all the time, every meal he has had I have had to carry it. * * * During that time Mr. Canning complained of pain in his left hip when he turns in his bed. * * * He cannot walk at the present time. * * * He was very active up to the time of his injury. * * * He sits up [in bed] to eat his meals."

The record also shows that plaintiff's hospital bill was $880 and the doctor bill $225, or a total expense of $1,105, leaving the sum of $4,895 for pain and

suffering and care while plaintiff is disabled from attending to his personal wants.

In *Cleven* v. *Griffin*, 298 Mich. 139, we said:

"No claim is made that the verdict was obtained by improper methods, prejudice or sympathy. There is no absolute standard by which we can measure the amount of damages in personal injury cases. The amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts. *Watrous* v. *Conor*, 266 Mich. 397; *Weil* v. *Longyear*, 263 Mich. 22. Courts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive. *Cawood* v. *Earl Paige & Co.*, 239 Mich. 485. We do not usually substitute our judgment for that of the jury unless the verdict shocks the conscience or has been secured by improper means, prejudice or sympathy."

When the medical and hospital expenses are deducted, the balance does not seem excessive in view of all the circumstances, especially in view of the fact that no showing has been made that the verdict was obtained by sympathy or prejudice.

The judgment is affirmed, with costs to plaintiff.

Bushnell, C. J., and Boyles, Reid, North, Dethmers, Butzel, and Carr, JJ., concurred.