**FULLER v. KING et al. (two cases).**

**Nos. 11649, 11650.**

United States Court of Appeals
Sixth Circuit.

May 26, 1953.

---

Leroy G. Vandeveer, Detroit, Mich., and Louis Granat, Brooklyn, N. Y., for appellants.

George H. Cary, Detroit, Mich., Cary & BeGole, Detroit, Mich., on brief, for appellee Thomas E. King.

A. Albert Bonczak, Detroit, Mich., James S. Shields and Leon H. Harman, Detroit, Mich., for appellees City of Detroit, St. Rwys. and William Bettinger.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellants, Charles A. Fuller and Estelle Fuller, his wife, filed separate actions in the District Court to recover damages from the appellees, Thomas E. King, City of Detroit and William Bettinger, for injuries caused by being struck by an automobile which was being driven by the ap-

pellee King. By agreement, the actions were tried together. The jury returned separate verdicts of no cause of action, upon which judgments were entered in favor of the appellees. The appeals were consolidated and have been heard upon a single record.

The evidence goes into great detail with respect to the scene of the accident and the events leading up to it, but the following statement is sufficient for the purposes of this opinion.

The accident occurred on Meyers Road just south of its intersection with West Seven Mile Road, in Detroit, Michigan. Meyers Road runs north and south and is fifty feet wide at the intersection. West Seven Mile Road runs east and west and is 52 feet wide on the west side of the intersection and 60 feet wide on the east side. On the southeast corner of the intersection is a large parking lot of the Royal Theatre that extends from the corner east about 400 feet and south about 353 feet, with north and south entrances into Meyers Road, south of the intersection. Immediately east of the east end of this parking lot and facing on West Seven Mile Road is the Royal Theatre. On each of the four corners of the intersection there is a traffic-controlled signal light located on a standard. On the evening of October 15, 1948, Mr. and Mrs. Fuller attended the movies at the Royal Theatre. They left the theatre shortly after midnight and walked west on the sidewalk on the south side of Seven Mile Road for the purpose of crossing Meyers Road and going to a parking lot on the west side of Meyers Road where they had parked their car. Mr. Fuller testified that when he was within five or ten feet of the intersection he looked at the traffic light and saw it was green; he glanced to the south and saw the headlights of an automobile from 400 to 500 feet south of the intersection with no standing or moving traffic in between; he looked to the north in which direction he could see approximately 300 feet and saw no vehicle or lights; the traffic light was still green as they stepped off the curb; after stepping into the street and proceeding toward the west curb and when he was about midway between the east side and the center of Meyers Road, the traffic light changed to amber; at that time he looked to the north and saw a bus of the Department of Street Railways of the City of Detroit, which was being driven by appellee Bettinger, about 150 or 175 feet north of the intersection, moving south; he and Mrs. Fuller stopped when they reached the center of the street with Mrs. Fuller on Mr. Fuller's left arm, at which time the light had turned to red, and he continued to watch the approaching bus; the traffic signal light was then green in favor of the bus proceeding south through the intersection; from 35 to 50 feet from where the Fullers were standing the bus suddenly changed its course and swerved to the left in the general direction of where they were standing and at an angle of about 15 to 20 degrees, headed directly toward them, traveling at a speed of from 30 to 35 miles per hour, without blowing its horn or applying the brakes; Mr. and Mrs. Fuller were forced back one or two steps to avoid being struck by the bus when it was about 4 or 5 feet from them, and which was about at the center line of the street as it passed them; and in so stepping back they were hit by the car of the appellee King which was proceeding north on the east half of Meyers Road, and of the approach of which he had no warning, by horn or otherwise.

Appellee King testified that he was driving a 1940 Dodge sedan, in good mechanical condition, going north on Meyers Road with the righthand wheels of his car about four feet from the east curb, until when about 30 to 35 feet south of the north entrance of the parking lot he slowed down to about 10 to 15 miles per hour and turned his car to the left in order to avoid a car which had proceeded partially out of the parking lot into Meyers Road and then straightened out heading due north at a speed of approximately 25 miles per hour, at which time his left wheels were about two feet east of the center line; at that time he saw that the traffic light was green for north and south traffic and also saw Mr. and Mrs. Fuller standing approximately in the center or slightly west of center in the street; after passing around the car coming out of the parking lot, there were no

589

parked cars or traffic which prevented his bearing to the right, although he did not do so; he observed the bus some 10 or 15 feet north of the intersection and moving into the intersection and judged it to be from 2 to 4 feet from the line of the west curb; he saw it change its course when about one-third across the intersection by turning suddenly to its left so that it was pointed directly at Mr. and Mrs. Fuller; it looked like it would hit them unless they moved out of the way; he did not blow his horn or signal the plaintiffs of his approach from the south; as the bus approached at a speed of approximately 30 miles per hour and was passing Mr. and Mrs. Fuller from the north and King approached from the south, Mr. and Mrs. Fuller, who were about a foot and a half west of the center line, took a half step back involuntarily and jumped backward into the side of his car. He also stated that the clearance between the left side of the bus and the left side of his car was approximately 1½ to 2 feet.

Appellee Bettinger testified that just preceding the accident as he was driving the bus south to the intersection, at a speed of approximately 25 to 30 miles per hour, he saw that the traffic light was red and slowed down to about 10 miles per hour; when about 10 or 15 feet from the north cross-walk the light changed to green and he accelerated the speed of his bus, going through the intersection at a speed of between 20 to 25 miles per hour; he also saw Mr. and Mrs. Fuller walking toward the center of the street and stop in the center; he did not turn the bus in any direction but came straight ahead; as he passed Mr. and Mrs. Fuller the left side of his bus was approximately 2 feet from them; there was about 38 inches of clearance between the bus and King's car which was within inches of the center line of the street; there was nothing to prevent him from turning to the right, but he did not do so, and at no time did he blow his horn. He did not see the impact between King's car and Mr. and Mrs. Fuller, but saw the body of Mrs. Fuller fly up into the air through his rear view mirror when less than a bus length past where they had been standing.

Mr. Fuller suffered a broken leg and other injuries. Mrs. Fuller's injuries were very severe and permanent, and required hospitalization over a period of months and numerous operations. She suffered a complete loss of memory as to all events from the time shortly prior to the accident until a time when she was in the hospital, and was not able at the time of the trial to testify about the accident.

The foregoing evidence was sufficient to take the case to the jury on the questions of negligence and proximate cause on the part of both of the appellees, King and Bettinger, and on the question of contributory negligence on the part of the appellants, and the District Judge was correct in submitting the case to the jury under appropriate instructions with respect to those issues. Appellants seek reversal of the jury's verdict and judgment rendered thereon because of alleged prejudicial error in allowing certain evidence to be considered by the jury and alleged erroneous instructions.

The question of evidence arose out of the following circumstances: Following the accident, the appellants employed a firm of lawyers in Detroit to prosecute their respective claims for damages, and on January 31, 1949, they filed separate actions on behalf of the appellants in the Circuit Court for the County of Oakland, State of Michigan, against Thomas E. King, named therein as the only defendant. Each declaration alleged negligence on the part of the defendant and that such negligence was the sole and proximate cause of the accident. The defendant King filed answers denying these allegations and stating that the sole and proximate cause of the accident was the negligent way in which the plaintiffs conducted themselves crossing the intersection against a red traffic signal light and jumping back into the path of defendant's car. In appellants' replies they denied the affirmative allegations of the answers and in support of such denial made reference to the occurrences set forth in their declarations. The declarations and replies were signed by their lawyer only, not by the appellants. The replies were filed

February 25, 1949, but the actions did not come on for trial and appellants becoming dissatisfied with the handling of their cases, employed new attorneys to represent them. On September 11, 1950, the actions were dismissed for "Lack of Progress." On October 6, 1950, the present actions were filed by the new attorneys in the U. S. District Court. These actions, in addition to proceeding against King, also made the City of Detroit and William Bettinger, the bus driver, parties defendant. In these actions the appellants rely upon the joint and concurrent negligence of both King and Bettinger. At the trial, counsel for the City of Detroit introduced in evidence, over objections of the appellants, certified copies of the pleadings and calendar entries, which showed the final entries of dismissal on September 11, 1950, in the State court actions. Appellants contend that the reception in evidence of these exhibits and the use of them thereafter by the appellees before the jury was prejudicial error.

In support of their position, appellants point out, as shown by the evidence, that the declarations and replies in the State court actions were not read by them before they were filed and were not signed or sworn to by them; that upon learning of the failure to make Bettinger and the City of Detroit parties defendant they were greatly disturbed, consulted with Mrs. Fuller's brother, who was an attorney in New York City, about the matter, and after he was able to come to Detroit took action by employing new attorneys to replace the attorneys who drafted and filed the pleadings, allowed the State court actions to be dismissed for lack of progress, and instituted the present actions which relied upon the joint and concurrent negligence of both King and Bettinger. They claim it was particularly prejudicial to permit the answers to be read to the jury, in that they were not drawn by their own attorneys or by anyone representing them, and contained false, self-serving declarations, in stating that the appellants attempted to cross the intersection against a red traffic signal light, whereas the undisputed testimony showed that the signal light was green at the time when appellants started across the intersection.

Appellees contend that the pleadings were quasi-admissions on the part of the appellants, in that they were prepared by their authorized agent and should be considered by the jury for what they were worth insofar as they contradicted the testimony of Mr. Fuller in the present actions; and that the answers were competent for the purpose of forming a basis for the denials and responsive allegations contained in the replies.

■■ It is an accepted rule of evidence that, under certain conditions, statements contained in pleadings in another action, prepared by counsel employed to handle such action, are quasi-admissions, and while not conclusive are nevertheless admissible in evidence, as is other evidence contradictory of testimony in the instant case. Wigmore on Evidence, 3rd Ed. Vol. IV, §§ 1058–1059, 1066, 1067. However, there is some question as to whether the general rule applies to pleadings which were not seen, read to, signed by or sworn to by the party upon whose behalf they were filed, or relied upon in the prosecution of such action, as in instances where pleadings have been later superseded or amended, or the action has been abandoned or dismissed. There is some authority, as pointed out by Wigmore, supra, that holds that such circumstances should merely go to the weight of the evidence and not affect its admissibility. See: Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, 2 Cir., 32 F.2d 195, 198. But the weight of authority, as well as the Michigan rule, appears to be opposed to this view. Cady v. Doxtator, 193 Mich. 170, 172, 159 N.W. 151, 14 A.L.R. 10; Annotations, 14 A.L.R. 22–32, 90 A.L.R. 1393–1396. The prevailing rule in the federal courts appears to be to the same effect. Combs v. Hodge, 21 How. 397, 404, 16 L.Ed. 115; Delaware County Commissioners v. Diebold Safe & Lock Co., 133 U.S. 473, 487, 10 S.Ct. 399, 33 L.Ed. 674; Kirven v. Virginia Carolina Chemical Co., 4 Cir., 145 F. 288, 290; Fidelity & Deposit Co. v. Redfield, 9 Cir., 7 F.2d 800; Fidelity & Casualty Co. v. Brightman, 8 Cir., 53 F.2d 161, 171. This Court apparently has also adopted this view. Kentucky Rock Asphalt Co. v. Helburn, D.C., 20 F.Supp. 364, 369, affirmed 6 Cir., 108 F.2d

779; Anderson v. Tway, 6 Cir., 143 F.2d 95, 100, certiorari denied 324 U.S. 861, 65 S.Ct. 865, 89 L.Ed. 1418. We are of the opinion that the trial court was in error in permitting the jury to consider the unsigned, subsequently renunciated, pleadings in the State court actions. This is particularly true with respect to the self-serving declarations contained in the answers, the use of which was not restricted or qualified by an appropriate instruction.

■ Even if we should assume that the declarations and replies were properly received, we think it was error to admit in evidence the calendar entries, made by the Clerk, in the State court actions, without some qualifying explanation. The dismissal of the actions for lack of progress has very little, if any, relevancy on the issue of whether the appellee Bettinger, who was not a party to that suit, was negligent, particularly when another action was promptly filed against both Bettinger and King in another court, and unless the legal aspects of such a dismissal were explained to the jury it was possible for such action to be misinterpreted. Under such circumstances, the trial judge should explain or limit the use of the evidence by an appropriate qualifying instruction. Aetna Life Ins. Co. of Hartford, Conn. v. Kelley, 8 Cir., 70 F.2d 589, 594; Sprinkle v. Davis, 4 Cir., 111 F.2d 925, 931–932, 128 A.L.R. 1101; Majestic v. Louisville & Nashville R. R. Co., 6 Cir., 147 F.2d 621, 627; Thompson v. Camp, 6 Cir., 163 F.2d 396, 402–403.

■ Although no formal exception was taken by appellants to the failure of the Trial Judge to give such qualifying instructions we are of the opinion that the matter had been sufficiently called to his attention prior to the giving of the instructions to have necessitated such action on his part. Williams v. Powers, 6 Cir., 135 F.2d 153; Sweeney v. United Feature Syndicate, 2 Cir., 129 F.2d 904; Hower v. Roberts, 8 Cir., 153 F.2d 726, 729; Keen v. Over Seas Tankship Corp., 2 Cir., 194 F.2d 515, 519; Montgomery v. Virginia Stage Lines, 89 U.S.App.D.C. 213, 191 F.2d 770, 773, 774; Mondshine v. Short, 5 Cir., 196 F.2d 606, 608.

■ We are of the opinion that the appellants were entitled to an instruction on the issue of last clear chance, which theory of liability was presented by Count 2 of the complaints, and with respect to which an instruction was requested in Paragraph XI of appellants' Requests to Charge. St. John v. Nichols, 331 Mich. 148, 156–157, 49 N.W.2d 113.

■ For the purposes of retrial, it is advisable to refer to the view expressed by the Trial Judge in colloquy with counsel, although no ruling carrying it into effect was made during the trial. The Trial Judge stated to counsel in effect that in his opinion the appellants were guilty of contributory negligence as a matter of law, in that they failed to observe how long the green traffic light signal had been in effect before they attempted to cross Meyers Road, and did not give adequate consideration to traffic known to be coming from the south which resulted in their placing themselves in a place of danger directly contributing to the accident. However, he left the question of contributory negligence to the jury, and a later ruling for judgment for appellees notwithstanding a verdict favoring the appellants was rendered unnecessary by the action of the jury in finding for the appellees. We are not in accord with the view expressed by the Trial Judge inasmuch as the undisputed evidence showed that the traffic light signal was green at the time they started across the intersection and did not turn to amber and then to red until they were well out into the street. Such a result frequently happens to the ordinary prudent pedestrian who traverses the traffic laden streets in our heavily populated cities in a bona fide attempt to cross in safety and such conduct should not bar him from recovery as a matter of law. The drivers of motor vehicles have no monopoly of the use of the streets and highways. A pedestrian protected by a green traffic light is not converted into a trespasser upon a change of light before the crossing is completed. After reaching a place of comparative safety, it can not be held as a matter of law that Mr. and Mrs. Fuller were negligent in watching the bus headed directly at them, instead of looking to see what *might* be

coming from that part of the street which they had already crossed. See: Siegel v. Detroit Cab Co., 246 Mich. 620, 622–623, 225 N.W. 601. The question of contributory negligence is a question of fact to be decided by the jury under all the circumstances in the case. Werker v. McGrain, 315 Mich. 287, 290, 24 N.W.2d 111; Canning v. Cunningham, 322 Mich. 182, 187–188, 33 N.W.2d 752; Fraser v. McArthur, 271 Mich. 622, 625–626, 260 N.W. 772; Carter v. C. F. Smith Co., 285 Mich. 621, 625, 281 N.W. 380; Wallace v. Kramer, 296 Mich. 680, 689, 296 N.W. 838.

On the retrial of the case we also think it advisable for the Trial Judge to omit from his charge to the jury any reference to the ultimate liability between Bettinger and the City of Detroit for the payment of any judgment which might be rendered against both of them. This involved a question of law not raised by the pleadings and not in any way relevant to the factual issues of negligence and contributory negligence being considered by the jury.

The judgment of the District Court is reversed, and the case remanded for a new trial.