**CONTINENTAL INSURANCE COMPANY OF NEW YORK, Plaintiff-Appellee,**

v.

**Robert SHERMAN,\* Third-Party Plaintiff-Appellee,**

v.

**COATES & DORSEY, INC., Third-Party Defendant-Appellant.**

**No. 29600.**

United States Court of Appeals, Fifth Circuit.

March 10, 1971.

Rehearing Denied and Rehearing En Banc Denied April 29, 1971.

---

\* On October 26, 1970, Stanley Haves, Administrator of the Estate of Robert Sherman, deceased, was substituted as a party to this action, pursuant to Rule 43(a) F.R.A.P. 28 U.S.C.A.

Jeanne Heyward, Talburt, Kubicki & Vogler, Aubrey L. Talburt, Miami, Fla., for appellant.

Smathers & Thompson, Miami, Fla., William C. Lewis, Jr., for Continental Ins. Co.

Stanley Haves, William C. Lewis, Jr., Miami, Fla., for Robert Sherman.

Before RIVES, AINSWORTH and MORGAN, Circuit Judges.

MORGAN, Circuit Judge:

This is an appeal from a judgment based on a jury verdict for the plaintiff in a third-party action brought by Robert Sherman against Coates & Dorsey, Inc., the agent of the Continental Insurance Company of New York, to recover for damages sustained to the schooner *Penida* on the ground that Coates & Dorsey negligently caused the issuance of a policy of marine insurance on the vessel containing a private pleasure warranty which failed to cover the incurred loss and failed to notify Continental that the vessel would be used for commercial purposes and from the dismissal of a cross-claim brought against Continental by Coates & Dorsey for indemnification. We reverse and remand.

Robert Sherman, the appellee here, rented his schooner, the *Penida* to Richard Harris for a voyage to the Galapagos Islands for the purpose of conducting ornithological research, treasure hunting and to enable Harris to research a proposed book. Harris agreed to pay the premium on a policy of marine insurance on the vessel, put the vessel in seaworthy condition, and pay Sherman approximately $2,000 for the use of the vessel. This agreement was reduced to writing in an instrument styled "Agree-

ment for Loan and Use of Boat at Costs", dated November 5, 1967.

On November 3, 1967, Sherman and Harris contacted Arthur Pendleton, vice president of Coates & Dorsey, for the purpose of obtaining the necessary insurance coverage. They advised Pendleton that Sherman was going to loan the *Penida* to Harris for the voyage to the Galapagos Islands for the purpose of conducting ornithological research; that Harris would pay for the insurance and be responsible for putting the *Penida* into seaworthy condition both before and after the voyage. Apparently, neither Sherman nor Harris informed Pendleton of any written agreement between themselves, either executed or contemplated, which would amount to a chartering of the vessel, nor that Harris was to pay additional consideration to Sherman for the use of the vessel, nor that the voyage had a commercial purpose.

At the trial, Pendleton testified that after discussing the matter with Sherman and Harris he contacted the manager of Continental's Marine Department and fully conveyed the information he had received from Sherman and Harris. Coates & Dorsey was thereafter authorized by Continental to issue to Sherman a policy of marine insurance on the hull of the vessel containing a private pleasure warranty, that is, a restrictive clause prohibiting the chartering of the vessel or its being used for commercial purposes.[1] The policy was issued and mailed to Sherman on November 17, 1967.

On January 22, 1968, the *Penida* was demasted and damaged to the extent of $10,160 when it rammed a freighter off Key West, Florida, while in the course of transferring a seriously ill seaman to the freighter.

Continental denied coverage and subsequently brought an action for rescission of the marine insurance policy in question on the ground of fraud and misrepresentation, alleging that Sherman had failed to advise it of the true and intended purposes and uses of the vessel and the fact that the vessel was to be used for commercial purposes as distinguished from private pleasure purposes in violation of the private pleasure warranty. Sherman answered by alleging that Continental's agent, Coates & Dorsey, was duly advised that Sherman was chartering the vessel to Harris and that Harris paid a large portion of the premiums and that Sherman was to receive other consideration and that, notwithstanding this knowledge, Coates & Dorsey caused the insurance policy to issue. Sherman also counterclaimed against Continental for recovery under the policy and filed a third-party claim against Coates & Dorsey. In the third-party claim, Sherman alleged that Coates & Dorsey was advised that Harris was paying for the insurance and would financially reimburse and/or enrich Sherman for the use of the *Penida* and that Coates & Dorsey was negligent in failing to give proper and adequate information to Continental as to the true status of the arrangement between Sherman and Harris or in failing to secure adequate insurance coverage in behalf of Sherman. In its answer to the third-party claim, Coates & Dorsey admitted that the premium had been paid by Harris and that Harris was going to do certain repairs on the vessel. It further alleged that Sherman was contributorily negligent in failing to fully advise Continental of the intended uses and purposes of the vessel.

On July 31, 1969, an order was entered dismissing the rescission action upon stipulation of Continental and Sherman, after they had entered into a covenant not to sue.

---

1. The private pleasure warranty contained in the policy reads as follows:

The coverage under this policy shall terminate upon the sale, assignment, transfer or pledge on the interest insured hereby or upon the chartering, hiring or use of the vessel for other than private pleasure purposes unless the previous written consent of this Company has been obtained.

Thereafter, Coates & Dorsey cross-claimed against Continental for indemnification alleging that all facts communicated to Coates & Dorsey by Sherman and Harris were in turn communicated by it to Continental so that Continental had actual knowledge that Harris paid the insurance premium, would put the vessel in a seaworthy condition at his own expense and that the vessel would be used for ornithological research, and, having this knowledge, Continental authorized it to deliver the policy to Sherman. Further, Coates & Dorsey alleged that at all times it acted within the course and scope of its employment with Continental, but that Continental's denial of coverage and suit for rescission was an attempt to repudiate the authorized act of Coates & Dorsey, its authorized agent, in issuing the policy and prompted Sherman's third-party action against it.

On September 22, 1969, the district court entered an order granting Continental's motion to dismiss Count I of Coates & Dorsey's cross-claim for indemnification with prejudice for failure to state a claim upon which relief could be granted under Rule 12(b) (6), Fed. R.Civ.P., 28 U.S.C.[2] Coates & Dorsey contends that this was error.

At the trial, Coates & Dorsey's cross-claim for indemnification, which had been previously dismissed, was admitted into evidence over Coates & Dorsey's objection and published to the jury by reading. Sherman's counsel was also allowed to state during his closing argument to the jury that the dismissal of the cross-claim was presently on appeal and indicated that Coates & Dorsey would be successful in obtaining indemnification from Continental should Sherman prevail in the action before the jury. Coates & Dorsey contends that the admission of the cross-claim into evidence and the argument to the jury which it supported constituted prejudicial error.

Coates & Dorsey also contends that the district court's refusal to admit Continental's complaint in the original rescission action into evidence was prejudicial error and that the district court erred in not granting Coates & Dorsey's motion for a directed verdict and motion for judgment notwithstanding the verdict and/or new trial.

### I. Admission of the Cross-claim.

In its answer to the third-party complaint, Coates & Dorsey admitted "that part of the insurance premium was paid with the check of Richard Harris, and that Richard Harris was going to do or have done certain repairs upon the 'Penida'," and denied the allegations of Sherman's third-party complaint that it had been advised that Harris "was going to otherwise financially reimburse and/or enrich the owner of the vessel for the use of the same in a trip from Miami to the Galapagos Islands and return". In its amended cross-claim against Continental, Coates & Dorsey alleged:

2. That prior to the issuance of such policy, ROBERT SHERMAN informed COATES & DORSEY, INC., of certain facts pertaining to the boat, its use, and *the consideration for its use,* including the fact that the party using the boat would pay for the insurance premium, would pay approximately $400.00 or $500.00 to make the boat seaworthy, and that the boat would be used for ornithological research; that all facts which were communicated to COATES & DORSEY, INC., were in turn communicated by COATES & DORSEY, INC., to CONTINENTAL INSURANCE COMPANY OF NEW YORK; that CONTINENTAL INSURANCE COMPANY OF NEW YORK, having actual knowledge *that the aforesaid consideration would be paid for the use of the* "Penida", did nevertheless authorize COATES & DORSEY, INC., to countersign and deliver unto ROBERT

---

2. Count II dealt with the indemnification of attorneys' fees if Coates & Dorsey was successful in the negligence action and is not at issue here.

SHERMAN its insurance policy which is the subject matter of the original Complaint, the Counterclaim, and the Third Party Claim filed in this cause. (Emphasis supplied.)

The amended cross-claim was introduced into evidence by Sherman over Coates & Dorsey's objection, and Sherman's attorney relied heavily on the inconsistency between the allegations of the third-party answer and the cross-claim in closing argument, arguing that the allegations of the cross-claim constituted an admission of liability on the part of Coates & Dorsey and strongly intimating that although the cross-claim against Continental had been dismissed, Coates & Dorsey would ultimately prevail, so that if the jury returned a verdict against Coates & Dorsey the cost of the judgment would be passed on to Continental.

■ As a general rule the pleading of a party made in another action, as well as pleadings in the same action which have been superseded by amendment, withdrawn or dismissed, are admissible as admissions of the pleading party to the facts alleged therein, assuming of course that the usual tests of relevancy are met. Raulie v. United States, 10 Cir., 1968, 400 F.2d 487; Ross v. Philip Morris & Company, 8 Cir., 1964, 328 F. 2d 3; Great American Indemnity Company v. Rose, 5 Cir., 1957, 242 F.2d 269; Borel v. United States Casualty Company, 5 Cir., 1956, 233 F.2d 385; Fuller v. King, 6 Cir., 1954, 204 F.2d 586. See Rule 8–04(b) (4), Proposed Federal Rules of Evidence (1969). Strictly applied, however, this rule would place a litigant at his peril in exercising the liberal pleading and joinder provisions of

the Federal Rules of Procedure in that inconsistent pleadings under Rule 8(e) (2) could be used, in the proper circumstances, as admissions negating each other[3] and the allegations in third-party complaints and cross-claims seeking recovery over in the event of liability in the principal action could be used in that action as admissions establishing liability. Thus, as a necessary exception to the general rule, there is ample authority that one of two inconsistent pleas cannot be used as evidence in the trial of the other. Giannone v. United States Steel Corporation, supra, 238 F.2d at 544, n. 4; McCormick on Evidence, § 242, pp. 509–510 (1954); Note, 17 Tex. Law Rev. 191 (1939). It would seem that this principle would also include inconsistent positions taken in pleadings in a complicated joinder situation, involving, as here, the contingent liability of third parties. See Hines v. Trager Construction Co., Fla.Dist.Ct.App., 1966, 188 So.2d 826, 829, cert. den. Fla., 194 So.2d 618.

■ The cross-claim at issue here asserts a claim, in the nature of a third-party claim, seeking recovery over against Continental by way of indemnity in the event Coates & Dorsey fails to prevail in the negligence action. Accordingly, the pleading assumed the truth of Sherman's allegations against Coates & Dorsey as a necessary predicate in establishing Continental's duty to indemnify. Coates & Dorsey was thus required, at least implicitly, to take a position inconsistent with its position in the negligence action. To allow the jury to make adverse inferences from this would defeat much of the salutary effect of the flexible joinder provisions of the

---

3. In Giannone v. United States Steel Corporation, 3 Cir., 1956, 238 F.2d 544, 547–548, the court noted:

* * * Authorities rarely articulate what we believe to be a conflict between the admissions through pleading rule and Rule 8(e) (2) of the Federal Rules of Civil Procedure, 28 U.S.C., which allows inconsistent, alternative and hypothetical pleading. The rules encourage parties to plead not only what they know is factually true, but also any fact if they believe "there is good ground to support it." See Fed.R.Civ.P. 11. This soundly based policy * * * would tend to be defeated if allegations in the pleadings are admissible as evidence. Parties will hesitate to make notice-giving allegations at the risk of their being used as evidence, especially considering Fed.R.Civ.P. 15 liberating amendments.

federal rules. Accordingly, we hold that it was prejudicial error, necessitating a new trial, to admit as an admission Coates & Dorsey's cross-claim against Continental. This error was further compounded when counsel was allowed to suggest to the jury that the appeal from the cross-claim would be successful and that Continental would ultimately bear the cost of any resulting judgment. See McCormick on Evidence, § 152, p. 319 (1954); Rule 4–03, Proposed Federal Rules of Evidence and the Advisory Committee's Note thereunder.

## II. *Dismissal of Cross-Claim for Indemnification.*

As a general rule, a principal is obligated to indemnify an agent for any "payments of damages to third persons which he is required to make on account of the authorized performance of an act which constituted a tort * * *," but is not required to indemnify an agent "for pecuniary loss * * * resulting solely from the agents negligence". Sections 439(c) and 440(a), Restatement (Second) of the Law of Agency (1958).[4]

▉ In his third-party complaint against Coates & Dorsey, Sherman alleged that Coates & Dorsey "was negligent in that it failed to give proper and adequate information to the Plaintiff herein [Continental] as to the true status of the arrangement between the owner [Sherman] and Richard Harris, and/or, it failed to secure adequate coverage in behalf of Third Party Plaintiff [Sherman] and he has been deprived of the protection which an adequate policy would have provided him, all to his harm and detriment." Sherman thus makes two different allegations: (1) that Coates and Dorsey failed to inform Continental of the arrangement between Sherman and Harris; or (2) that, even if it conveyed this information to Continental, it failed to secure adequate insurance coverage. In this posture, the jury might find Coates & Dorsey liable on the ground either that the issuance of the inadequate policy was solely the result of Coates & Dorsey's failure to fully inform Continental of the arrangement existing between Sherman and Harris, or that, even though Coates & Dorsey fully informed Continental, a policy providing inadequate coverage was issued as a result of negligence for which Coates & Dorsey, as an agent for Continental, was liable. In the former situation, the principles of law expressed in the preceding paragraph clearly indicate that Coates & Dorsey would not be entitled to indemnification from Continental because the loss would be solely caused by Coates & Dorsey's negligence. In the latter situation, however, the reverse would be true, in that the loss would be the result of the issuance of the policy by Coates & Dorsey with Continental's authorization, in the face of information known to both that would lead a prudent man to the conclusion that the *coverage so issued was* inadequate. In light of this, the district court's dismissal of Count I of the cross-claim against Continental must be reversed and the question of indemnity submitted to the jury along with Sherman's third-party claim against Coates & Dorsey.

---

4. The Comment to § 439 states:

   d. An agent who violates his duty to give information to the principal, as a result of which an unnecessary payment is made, or who is guilty of negligence in the performance of his duties to the principal, is not entitled to indemnity for losses caused by such conduct.

   * * * * *

   g. * * * If, however, the agent, at the direction of the principal, commits an act which constitutes a tort but which the agent believes not to be tortious, he is entitled to indemnity to the amount which he is required to pay as damages.

   * * * * *

   The Comment to § 440 states:

   b. * * * The principal has no duty to indemnify the agent for loss caused solely by the agent's negligence whether or not the negligence constitutes a breach of duty to the principal. * * *

III. *Admission of Continental's Original Complaint.*

In light of the fact that Continental is now again in the case as a party defendant in Coates & Dorsey's action for indemnification, its original complaint against Sherman for rescission of the policy is admissible as an admission of a party insofar as it is relevant to the indemnity action and is subject to the general limitations concerning the use of dismissed pleadings as admissions discussed in Part I of this opinion.

IV. *Denial of the Judgment Notwithstanding the Verdict.*

It is well established that a judgment notwithstanding the verdict should not be granted unless under the evidence, together with all inferences that can be reasonably drawn therefrom, there can be but one reasonable conclusion as to the proper judgment. O'Neil v. W. R. Grace & Co., 5 Cir., 1969, 410 F.2d 908; Leach v. Millers Life Ins. Co. of Tex., 5 Cir., 1968, 400 F.2d 179. Viewed by this standard, and particularly in view of the credibility issues inherent in a case of this nature, we cannot say that the district court erred in denying the motion for a judgment notwithstanding the verdict.

The judgment of the district court on the jury verdict in favor of the appellee Sherman is hereby reversed and the matter is remanded for a new trial. The final judgment dismissing the cross-claim for indemnification against Continental is, likewise, reversed.

Reversed and remanded.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before RIVES, AINSWORTH and MORGAN, Circuit Judges.

PER CURIAM:

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.