220

spacers, which would make the structure collapsible. In the old structure this spacing and bracing, as we have said, was accomplished by the nailing of crossbars to the jacks or stringers or both. The mechanic confronted with the problem of replacing this fixed bracing and spacing bar with an element that was detachable so as to achieve the result of detachability or portability, might have used the idea of the bed rail, old in the art. He might have used crossbars attached with heavy, easily removed screws; he might have placed upon each of the jacks a piece of metal containing a hole, and made use of a rod with turned down ends which would drop into the holes, or he might have made use of any one of a number of known removable bars. In this situation it seems to the court that the solution of the problem involved only the exercise of ordinary mechanical skill, and that no invention was achieved.

The language of the Supreme Court of the United States in the case of the Pope Mfg. Co. v. Gormully & J. Mfg. Co. et al., 144 U. S. 254, 259, 12 S. Ct. 643, 645, 36 L. Ed. 426, at page 428, is directly in point. There, in discussing the validity of patents which were alleged to be improvements over the prior art, the court said: "It may be said of both of these patents that they are mechanical adaptations of or variations from what had before been exhibited by the English patents, rather than inventions of anything essentially novel. They appear to involve such immaterial changes as would be required to adapt a known device to use in a combination with other elements already existing, and such as would occur to any skilled mechanic. Indeed, the objects of these patents, and the same remark may be made of all, or nearly all, involved in these suits, seem to have been principally to forestall competition, rather than to obtain the just rewards of an inventor. It is true the defendants make use of devices similar in many particulars to those employed by the plaintiff, but they, too, seem rather to have adopted prior and known devices, and fitted them to the peculiar construction of their machine, rather than to have purloined them from the plaintiff." The court is of the opinion that this language of the Supreme Court is applicable to the present situation. Claim 3 of the patent sued upon is void for want of invention.

There will be a decree dismissing the bill for want of equity at the costs of the plaintiff.

District Court, S. D. Texas, at Houston. May 30, 1929.

No. 335.

Cole, Cole, Patterson & Kemper, of Houston, Tex., for plaintiffs.

Royston & Rayzor, of Houston, Tex., for defendant.

HUTCHESON, District Judge. At a former term of this court a final decree was entered denying the relief in part and in part remanding the case to the Deputy Commissioner. At the same term plaintiff filed her motion for rehearing, praying that the court set aside and vacate so much of its judgment as was adverse to plaintiff, which motion was by the court taken under advisement and carried over until the present term of this court.

On the hearing of that motion it was brought to the attention of the court that the Compensation Commission had issued instructions prior to the hearing of this cause by the Deputy Commissioner, requiring the commissioner to make fact findings, which instructions provided as follows: "Such compensation orders should contain full and complete findings of fact without conclusions, discussion or argument, and the award granting compensation or rejecting the claim should be the conclusion or judgment without reciting facts or quoting the law."

That these instructions were repeated, in substance, in the following form: "All material facts must be in findings of fact and not in the award of compensation or rejection of the claim."

Thereafter plaintiff made application to amend the original pleading to set out and

embody therein the orders and instructions above referred to, which amendment the court allowed.

Upon the pleadings as amended plaintiff now asserts not only that the award was invalid apart from the instructions, but by reason of the violation of the instructions it was also made clearly invalid.

Upon the original hearing of this matter I reached the conclusion, and in an opinion declared that the proper practice in such hearings before a commissioner required findings of fact, but that since the statute did not require such findings and merely authorized the setting aside of the award if contrary to law, if the award were set aside because of failure to find such fact findings, the court would be adding a term to the statute.

In view of the undoubted wisdom, if not necessity, of filing such findings of fact as adverted to in a former opinion in this case, and in view of the instructions issued by the commission to file specific findings of fact, which instructions were in this case violated, I think it entirely plain that the action of the commissioner in this case was contrary to the due administration of the law, and that the former judgment in this cause should be set aside and judgment now rendered vacating the award of the commissioner and sending the cause back for further trial in accordance with law.

That the matter of findings was embodied in instructions rather than rules and regulations, I do not find material.

The statute was intended to be remedial, and to give speedy justice while preserving substantial rights. And in view of the large powers given to the commissioner and the narrow limits within which a review is allowed, it is essential to due process in such cases that the commissioner conduct his proceedings in accordance not only with the law, but with the rules laid down and the instructions issued by the commission itself.

Section 939 of the Longshoremen's Act (33 USCA § 901 et seq.) provides that: "The United States Employees' Compensation Commission shall administer the provisions of this chapter, and for such purpose the Commission is authorized to make such rules and regulations * * * as may be necessary in the administration of this Act." And to contend that because these directions for the proper disposition of the substantial rights of the parties involved were by the commission called "Instructions" instead of "Rules and Regulations" deprives them of authoritative effect is a "sticking in the bark."

Let a decree be prepared and presented within 10 days in accordance with this opinion.

NATIONAL SURETY CO. v. OSWEGO STATE BANK OF OSWEGO, KAN., et al.

District Court, D. Kansas, Third Division. June 1, 1929.

No. 321.

McAnany, Alden & VanCleave, of Kansas City, Kan., for complainant.

Elmer W. Columbia, of Oswego, Kan., for defendants.

POLLOCK, District Judge. Defendant bank failed, and was by the bank commissioners of the state placed in the hands of a receiver to settle its affairs. At the time of its failure it had on deposit in its hands $28,-500 of the funds of the United States arising out of Indian Affairs. In order that the bank might procure this deposit from the government, it was required to and did give a surety bond for its repayment, which was done with plaintiff, National Surety Company, as surety thereon. After the failure of the bank, plaintiff, as surety on the bond, was required to and did pay the government the amount of its demand against the bank.

Plaintiff now brings this suit to obtain a decree against the bank and its receiver in charge of its affairs in liquidation requiring the payment to plaintiff of the amount it was required to pay the government as surety on the bond of the bank.

This suit is based on the ground the government by force of its statutory laws was entitled to priority in payment to it by the bank, and, as the plaintiff surety on the bond of the bank to the government was required to and did pay the government, it is now entitled to be subrogated to all rights the government had for its payment against the bank or its receiver.