**GENERAL ACCIDENT, FIRE & LIFE AS-SUR. CORPORATION, Limited, et al. v. CROWELL, Deputy Com'r, et al.**

**No. 7567.**

Circuit Court of Appeals, Fifth Circuit.

March 29, 1935.

Ed. Rightor and W. H. Sellers, both of New Orleans, La., for appellants.

John J. Conners and Rene A. Viosca, U. S. Atty., both of New Orleans, La., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from a judgment denying an injunction and affirming an award of compensation by a deputy commissioner, under the provisions of the Longshoremen's and Harbor Workers' Compensation Act. Act March 4, 1927, 44 Stat. 1424 (33 USCA §§ 901–950). It is unnecessary to refer to the assignments of error in detail.

It is not disputed that the accident happened to a longshoreman on a vessel while he was employed in loading cargo at New Orleans, nor that the amount of compensation awarded, if due, is correct; but it is contended that the claimant, Anderson, was injured while indulging in horseplay, initiated by himself, over a matter that was not immediately connected with the work, and therefore he could not recover. Reliance also is had on section 3 (b) of the act (33 USCA § 903 (b), which provides: "No compensation shall be payable if the injury was occasioned solely * * * by the willful intention of the employee to injure or kill himself or another." It is further

contended that the evidence before the commissioner does not sustain his finding that the injury to the claimant arose out of and in course of his employment.

The evidence before the deputy commissioner was in hopeless conflict, except as to the jurisdictional facts and that claimant broke his leg while working on the steamship Roland, as a longshoreman in the employ of T. Smith & Son, Inc., stevedores, for whom appellant was carrying insurance. Anderson, the claimant, testified that while stowing ground shrimp hulls in sacks in the mail room he stepped through a hole in the dunnage and fractured his leg. He denied emphatically that he had engaged in a scuffle or horseplay with any of his fellow employees. As against this a number of witnesses testified that Anderson engaged in a scuffle with another longshoreman, Grey, about his cotton hook, in the course of which both fell to the deck; Grey falling on top of Anderson and breaking his leg. As to this occurrence some of the witnesses testified that nothing was said about the cotton hook in the course of the encounter. Others testified that Anderson asked Grey where his hook was, and Grey said, "It is over there," pointing to a place, to which Anderson replied, "You are a damn liar. You have hidden my hook," and then grabbed Grey around the waist. Grey's testimony is perhaps the most material. He testified, in substance, that he (Grey) had moved Anderson's hook but it was hanging in the corner by the door; that Anderson said to him, "Where is my hook?" That he replied, "It is hanging up there," but did not point to it; 'that Anderson then grabbed him and started the tussle, in the course of which he slipped and Grey fell upon him, breaking his leg. He did not testify that Anderson said anything else to him.

The testimony tends to show that a cotton hook is a part of the usual equipment of a longshoreman, which he owns and carries with him at all times, and is used for handling cotton and other freight but was not needed for the stowing of the shrimp hulls in sacks, which were very light.

The finding of the deputy commissioner, so far as pertinent, was this: "Said employment was the stowing of shrimp hulls, handling cotton and handling sacks; on said March 25th, 1931, claimant and said Daniel Grey were waiting for the freight when claimant asked Daniel Grey—'Where's my hook?' and Daniel Grey replied—'It's hanging up there,' thereupon claimant grabbed Daniel Grey and said 'I don't see it,' and said scuffle followed, resulting in said injury; said hook was a cotton hook and was used in such employment by the claimant in performing part of his work in said employment and it was an instrument of such employment and the scuffle started in regard to said hook; said injury arose out of and in the course of such employment."

There is conflict in the reported decisions on the point' as to whether an employee, injured in horseplay or skylarking with another employee, during working hours, may recover compensation. However, practically all the cases hold that when the horseplay is initiated by the other employee the injured person may recover. And some cases hold that where the horseplay is initiated by the injured employee recovery is not barred. We will not attempt to review all these decisions. In Ætna Life Ins. Co. v. Windham (C. C. A.) 53 F. (2d) 984, we affirmed a judgment granting compensation to an employee, injured while tussling with the manager of a building, who had discharged him, and who was scuffling with him in an endeavor to make him accept the wages tendered and sign a receipt for them. In Brown v. Vacuum Oil Co., 171 La. 707, 132 So. 117, compensation was awarded an employee for injuries incurred while tussling with another employee for possession of a water hose, after water had been splashed on a co-worker. These cases illustrate the modern trend of jurisprudence.

It is settled that the finding by a deputy commissioner that compensation is due is final when supported by evidence, if he has jurisdiction. Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598. The act awards compensation for accidental injury or death arising out of and in the course of employment, including an injury caused by the willful act of a third person directed against an employee because of his employment, section 2 (2) of the act (33 USCA § 902 (2); and compensation is payable irrespective of fault as cause for the injury. Section 4 (b) of the act (33 USCA § 904 (b). Like all workmen's compensation laws, the act is to be liberally construed in favor of the injured employee. The provision of section 3 (b), relied upon by appellant, has no application to the facts in this case. It is a reasonable conclusion that the scuffle

was good natured and Anderson had no intention of injuring Grey. It is certain he had no intention to break his own leg.

There was sufficient evidence to support the finding of the deputy commissioner. The cotton hook was an implement of his calling that it was necessary for Anderson to have constantly at hand. It is immaterial that he did not need it in stowing the shrimp hulls. He might have required it to handle other cargo in the course of the day. When he could not find it, whether for want of making a diligent search or otherwise, it was his right to make inquiry and attempt to retrieve it. Grey's evidence establishes that he had moved the hook from the place where Anderson had put it. It might be well said that by doing so Grey initiated the subsequent tussle. There is no doubt that the tussle and the resulting accident occurred in the course of the employment and it is a reasonable conclusion that it also arose out of that employment.

The record presents no reversible error. Affirmed.