**TRAVELERS INS. CO. v. CARDILLO, Deputy Com'r, et al.**

No. 8521.

United States Court of Appeals District of Columbia.

Argued Nov. 1, 1943. Decided Dec. 20, 1943.

---

Mr. Ernest A. Swingle, of Washington, D. C., with whom Messrs. Edwin A. Swingle and Allan C. Swingle, both of Washington, D. C., were on the brief, for appellant.

Mr. Ward E. Boote, Chief Counsel, United States Employees' Compensation Commission, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Bernard J. Long, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee Cardillo.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

This is an appeal from the judgment of the District Court dismissing a bill for review of a workman's compensation award. The sole issue is whether the evidence before the Deputy Commissioner is sufficient to sustain a finding that the injury arose out of the employment.[1]

The employee, John Oster, was an ice technician working at a public skating rink and stadium. His duties required that he be on the job during the night. For the convenience of his employer, as well as for his own convenience, he slept in a small room underneath the stadium seats, which was reached by a stairway leading to a trap door in the floor. On the night of the injury the watchman making his rounds heard Oster screaming for help in his room. The watchman tried to get in but found the trap door locked from the inside. While he was getting a sledge hammer to break in, Oster managed to push back the bolt holding the trap door. When the watchman opened the door Oster slid down the stairs. He was discovered to have been beaten, his hands and feet tied and set on fire with highly inflammable paint thinner. His injuries were serious and permanent. So much of the evidence is uncontradicted.

Oster testified that he had gone out to a restaurant after finishing his work sometime after midnight and had returned between three a.m. and four a.m. He threw himself on the bed without undressing and went to sleep. He was awakened by two or three men, one of whom had a flashlight and a gun. They asked him for money and he thought they were after the night's receipts, which he did not keep. He was rendered unconscious by a blow which cut him severely under the chin, and when he recovered consciousness his hands and feet were tied and he was on fire from paint thinner which had been poured on the floor and ignited. While the watchman was getting the sledge hammer he managed to release the bolt holding the trap door, and, when the door was opened, slid down the steps. There was about four hundred dollars under his pillow but it was not taken, and there was no evidence that the room had been searched.

Appellant attacks the finding of the Deputy Commissioner that the injury arose out of the employment, on the ground that the record shows no adequate explanation of how the assailants got into the room, or how they got out, or what the motive of the assault was. It was shown beyond question that they did not enter the window. Oster testified that when he retired at four a.m. he locked the trap door with a bolt. This would make it impossible for them to have entered by that means after Oster had gone to sleep. There is no evidence that anyone came out of the room through the trap door after the watchman had discovered and rescued Oster. There is testimony from a policeman that Oster told

[1] Section 2(2) of the Longshoremen's and Harbor Workers' Compensation Act, Mar. 4, 1927, 44 Stat. 1424, 33 U.S.C.A. § 902(2).

him, during the period of convalescence from his injuries, about inviting some women to his room whose names he refused to disclose. The policeman also testified that Oster was extremely non-cooperative in assisting the officials in solving the crime. On the face of the record, if we are to believe Oster's testimony, and assume that he did not bring the assailants into the room with him, the persons who committed the assault must have entered the room some time while Oster was eating at the restaurant. They must have made their exit after Oster had slid down the stairs and was lying injured in the tool room, during a brief period while the watchman had gone to telephone for the police. Since Oster did not testify to that effect and there is no evidence that he was unconscious at this time, this explanation is subject to considerable doubt.

On the other hand, any explanation of the crime which would relieve the insurance carrier of liability is equally difficult to believe from the evidence. It would have been practically impossible for Oster to have tied himself hand and foot and then set the liquid afire. It is, of course, possible that he invited his assailants to his room and that the motive for the injuries arose out of a desire for revenge on account of circumstances which Oster does not now care to explain. This, however, is pure speculation.

 Since the injuries occurred while the employee, Oster, was on the premises in connection with his employment it is presumed that they arose out of his employ-

ment unless the contrary is shown.[2] In such a situation, where the explanations of the injuries which are consistent with liability are just as plausible as those which would avoid liability we have no right to reverse a finding of fact made by the Deputy Commissioner.[3] The only impeachment of Oster's testimony is (1) his inability to explain how his assailants got in and out of the premises, and (2) conflicting stories about the accident which he is alleged to have told a policeman. The Deputy Commissioner having heard all the testimony chose to believe Oster. We have no right to substitute our own judgment on the credibility of this testimony for that of the Deputy Commissioner.

The judgment below will, therefore, be affirmed.

GRONER, C. J. (dissenting).

I dissent solely for the reason that claimant's story of the circumstances of his injury, when considered in the light of the conceded physical conditions surrounding him at the time, is so palpably untrue as to be unbelievable. If more than this is necessary, it may be added that his statements to various police officers were wholly different and in all essential respects directly contradictory of his later testimony at the hearing and on which the Deputy relied.

With proper deference to the rule which takes from us the right to weigh the evidence or pass upon the credibility of witnesses, I cannot concede that it obliges me to accept the impossible.

[2] Hartford Accident & Indemnity Co. v. Hoage, 1936, 66 App.D.C. 160, 85 F. 2d 417; Scott v. Hoage, 1934, 63 App. D.C. 391, 73 F.2d 114.

[3] Del Vecchio v. Bowers, 1935, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229; South

Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Parker v. Motor Boat Sales, Inc., 1941, 314 U.S. 244, 62 S.Ct. 221, 86 L. Ed. 184.