## UNITED STATES v. COLD METAL PROCESS CO. et al.

### No. 10338.

Circuit Court of Appeals, Sixth Circuit.
Dec. 12, 1947.

Roy C. Hackley, Jr., of Washington, D. C. (John F. Sonnett, Roy C. Hackley, Jr. and Alfred C. Aurich, all of Washington, D. C., Don C. Miller, of Cleveland, Ohio, and Peyton Ford, of Washington, D. C., on the brief), for appellant.

Howard F. Burns, of Cleveland, Ohio, and C. B. Zewadski, of Detroit, Mich. (Clarence B. Zewadski, of Detroit, Mich., Franklin B. Powers, of Youngstown, Ohio, and Howard F. Burns, of Cleveland, Ohio, on the brief; Whittemore, Hulbert & Belknap, of Detroit, Mich., Manchester, Bennett, Powers & Ullman, of Youngstown, Ohio, and Baker, Hostetler & Patterson, of Cleveland, Ohio, of counsel), for appellees.

Before HICKS, ALLEN and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This is an action praying for cancellation ab initio of Steckel patents 1,744,016, and 1,779,195, for fraud upon the Commissioner of Patents in the procurement thereof, or in the alternative, as to 1,744,016, for mutual mistake of fact upon the part of the applicant and the Commissioner of Patents.

Patent 1,744,016, issued January 14, 1930, solved the problem of cold-rolling steel and other metals to thin strip form without the intermediate annealing processes theretofore practiced. Patent 1,799,195, issued October 21, 1930, applies to 4-high mills, and particularly to the rolling of thin sheet-like material in long lengths. It solved the problem of rolling hot or cold strip metal of great thinness relative to its width and at high speed in such a way as to substantially prevent buckling or riffling.

Both patents have previously been held valid in extended litigation: Cold Metal Process Co. v. United Engineering & Foundry Co., D.C., 3 F.Supp. 120, 3 Cir., 68 F.2d 564; certiorari denied, 291 U.S. 675, 54 S.Ct. 530, 78 L.Ed. 1064; Cold Metal Process Co. v. American Sheet & Tin Plate Co., D.C., 22 F.Supp. 75; Cold Metal Process Co. v. Carnegie-Illinois Steel Corp., 3 Cir., 108 F.2d 322. This record shows that the inventions they embodied have been adopted widely in the industry.

The principal fraud claimed to have been practiced in the procurement of 1,744,016 is that appellees' expert witness, Clark, is alleged to have falsely represented to the Patent Office under oath that the Steckel Mill and its process inherently produced a revolutionary type of steel and oth-

er metals in that it eliminated objectionable preferred orientation of the crystal grains which impairs the quality of the product and necessitates an intermediate annealing process. It is alleged that Clark falsely declared that the Steckel process and mill secured the desirable random orientation and that the Patent Office was thereby induced to allow the process and apparatus claims of the patent theretofore rejected.

We have no difficulty with this phase of the case. As pointed out in the careful and elaborate findings of fact of the District Court, which are amply supported by the record, appellant's contention as to patent 1,744,016 is based upon the theory that Clark represented to the Patent Office that the Steckel Mill secured complete and perfect random orientation. A careful reading of Clark's reports and affidavits shows that what he did represent is fairly summarized in his statement that "The Steckel pattern more nearly approaches the ideal x-ray pattern than any I have ever observed in my own researches or have ever seen published." The record supports the finding of the District Court that this and similar statements were believed by Clark to be true, and were, when considered in their entirety, true.

The District Court was clearly correct in concluding that neither fraud nor mutual mistake of fact existed in the procurement of this patent.

■■ A less simple situation is presented as to patent 1,799,195; but we think that the District Court correctly disposed of this phase of the case also. The circumstance that both Steckel and Biggert & Johnson, who at the time were prosecuting separate patent applications covering overlapping processes and disclosures in 4-h rolling mills, were represented in the Patent Office in the allowance of their patents and in interference proceedings by the same attorneys, the Byrnes firm, of course resulted in difficulty. Both parties insisted upon the retention of the attorneys and the representation of their conflicting interests by the same firm was by express consent; hence the action taken by the attorneys, so far from being fraudulent, was in strict accord with the sixth canon of ethics of the American Bar Association. The Patent Office, which handled the separate patent applications through the same primary examiner and the same assistant examiner, necessarily was aware of the representation of two sets of parties by one firm and of the common ground covered by the patent applications. Over 14 years after the event the former Commissioner of Patents declared, in effect, that he was not apprised of the circumstances surrounding the allowance of the Steckel patent; and yet before its issuance a formal motion to reopen the interference proceedings was filed by Biggert & Johnson, to which was appended as an exhibit the contract of June 20, 1927, negotiated by the Byrnes firm between Biggert & Johnson and Steckel, and here alleged to be fraudulent. The motion also attacked the proceedings because of situations which arose from representation of conflicting interests by one and the same firm of attorneys, the Byrnes firm. The Commissioner's decision dismissing the motion to reopen, dated October 8, 1930, recites the existence of the contract. He testified that his office gave these matters careful consideration, and it is evident that he could not have been misled.

While all questions presented have been considered, it would serve no purpose to detail the extremely voluminous testimony and exhibits, the salient portions of which have been summarized in the findings of the District Court, which are complete, responsive to and amply supported by the record. These findings are binding here if the record offers an adequate basis for the conclusions and inferences drawn by the District Court. Walling v. General Industries Co., 330 U.S. 545, 67 S.Ct. 883. But appellant's contentions repeatedly ignore the findings and the substantial evidence upon which they are based.

The weight of the testimony establishes, and the District Court found, that the parties did not enter into any plan to deceive the Patent Office. No perjury was committed in the proceedings before the Patent Office, as was the case in Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381. Nor, as found by

the District Court, were the facts misrepresented to the Commissioner or his examiners, as was the case in Federal Communications Commission v. WOKO, Inc., 329 U.S. 223, 67 S.Ct. 213. The essential acts and relationship of the parties were known to the Patent Office before patent 1,799,195 was issued.

Both patents have now expired. If, as significantly found by the District Court, the Government was as strongly convinced that these patents were procured by fraud as is now urged, there is no adequate explanation why the present suit to cancel the patents was not filed until some 13 years after all of the facts were fully revealed to the Patent Office.

The judgment of the District Court is affirmed.