## TIANA CORP. v. HARTLEY.

United States District Court
S. D. New York.
June 26, 1951.

Edward Jerome, New York City, for plaintiff.

Lovejoy, Morris, Wasson & Huppuch, New York City, W. M. Lovejoy and L. Stevenson, New York City, of counsel, for defendant.

SAMUEL H. KAUFMAN, District Judge.

Plaintiff, a New York corporation, is engaged in the export business. Defendant is the sole proprietor of a business manufacturing and dealing in chemicals and dyestuffs. Plaintiff seeks to recover damages for an alleged breach of contract of sale. Jurisdiction is predicated upon diversity of citizenship.

On or about February 27, 1947, Robert C. Winthrop, Jr., an agent of plaintiff and of G. R. Coleman & Co., an affiliate of plaintiff, called at the office of defendant in Boston, and expressed an interest in the purchase of various dyes. At that time, with respect to the larger producers, the demand for dyestuffs exceeded the supply, particularly for types known as "sulphur black" and "direct black".

The price in the open market for sulphur black in 200% concentration ran, approximately, from $1.25 to $1.75 per pound. The market price of direct black

in 200% concentration ranged from about $1.25 to $1.40 per pound.

Winthrop inquired of defendant whether he had for sale sulphur and direct black in 200% concentration. Defendant replied that none was available. The facts are in dispute as to what next occurred. Winthrop testified that defendant represented that he could manufacture dyes of the type and concentration desired. Defendant denied this, contending that he advised Winthrop that the colors desired could be produced by mixing other colors purchased in the open market. He testified that he told Winthrop that the concentration of the resultant of this mixture was beyond his control, and dependent upon the concentrations of the component colors, since the necessity of conforming to the desired shades rendered the ultimate concentration of the mixed color indeterminable. The fact that the dyes were to be manufactured by the mixing of various colors is not in dispute.

The prices and quantities were agreed upon and defendant, in Winthrop's presence, dictated and signed a letter dated February 27, 1947. This letter, written on both sides of one sheet of paper, and addressed to G. R. Coleman & Co., contained, among other matters, the following provisions relevant to the issues here presented:

"It is our understanding that you will agree to take 8,000 lb. [sic] of SULPHUR BLACK * * * at .85¢ per lb. F.O.B. Portsmouth, New Hampshire. These are mixed colors.

Also that you agree to take—5,000 lbs. of DIRECT BLACK * * * at $1.10 per lb. F.O.B. Portsmouth, New Hampshire, they are also mixed colors.

We agree to deliver these dyestuffs any time up to the 1st of APRIL, 1947, and if we have any left over at any time we will re-negotiate."

Winthrop wrote across the top of the letter:

"Accepted
G R Coleman & Co Inc
Robert C. Winthrop Jr".

The reverse side of the letter contained the notation:

"Re: SULPHUR BLACK

This is based on the 200% strength and is desired first as 2 B
     Second as    R
     Third as     G
       * * *

Re: DIRECT BLACK

This black is based on the 200% strength It is preferred to be similar to DUPONT'S: PONTAMINE BLACK E. DOUBLE CONC. OR: NATIONAL'S: G.X.O.O."

Although Winthrop accepted the letter of February 27, 1947 on behalf of G. R. Coleman & Co. Inc., plaintiff succeeded to the rights thereunder. W. M. Hunt, treasurer of plaintiff, sent a letter to defendant dated March 4, 1947, stating:

"With reference to your recent conversation with our Mr. Winthrop and your memorandum letter of February 27, please use this letter as your written authority to proceed to produce the Direct and Sulfur colors which we have ordered. These are:

8000 lbs. of Sulphur Black 200%, preferably 2B,

    R, G, at 85¢/lb. $6800.00 · * * *

5000 lbs. Direct Black 200%, Pontamine or GXOO at 1.10/lb. 5500.00 * * *

We understand that these items or any part thereof will be ready for shipment not later than March 31, 1947 or we shall have an option to extend our order or renegotiate after that period. All colors must pass our tests which prove that the colors are exactly as the type they are supposed to approximate or be close enough to be resold for almost identical products.

Upon your presentation of pro-forma invoices showing readiness to ship and size of packing, we shall give you definite shipping instructions. Our check shall be presented against your regular invoices with inland shipping documents attached."

■ Defendant testified he first saw the letter of March 4, 1947 after obtaining it from the files of the executors of the estate of his former attorney in January, 1951. That testimony cannot be credited in the light of all of the evidence. It may

be noted that, in his original answer to the complaint, which was introduced in evidence, defendant affirmatively alleged that the contract between the parties was the letter of March 4, 1947. An amended pleading, while not a conclusive judicial admission, is nevertheless competent evidence of the facts stated. Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc., 2 Cir., 1929, 32 F.2d 195, certiorari denied, 1929, 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629.

The letter of March 4, 1947 must be held to be the construction placed by the parties on the agreement embodied in the letter of February 27, 1947, and it is further found that the parties acted in accordance with that construction.

It must therefore be found that there was a warranty that the sulphur black and direct black to be delivered would each have a concentration of 200%. The direct black was delivered on March 19, 1947, the sulphur black on March 24, 1947. Plaintiff paid to defendant a total of $5,959.65 therefor. The dyes were promptly tested. The sulphur black was found to have a concentration of 75% instead of 200% and the direct black to have a concentration of 100% instead of 200%.

On April 17 and April 21, 1947, plaintiff wrote defendant advising him that the goods delivered were not in accordance with the specifications set out in the letter of March 4, 1947 and demanded reimbursement of the purchase price for these goods, and requested defendant for "shipping instructions on this material which we now hold in warehouse".

Defendant does not dispute plaintiff's claim that the concentration of the dyestuffs was very materially below 200%. He contends, however, that the letter of February 27th constituted the agreement between the parties and that it was contemplated only that plaintiff would receive dyes having a concentration as near 200% as possible. Even if defendant's version of the contract were correct, the parties could not have contemplated that the concentration of the dyes would fall as low as 75% or 100%. Defendant's explanation of the extent to which the concentration of the dyes could, under the contract, vary from 200% was completely unsatisfactory.

The dyestuffs delivered by defendant to plaintiff so far departed from the dyestuffs contemplated under the agreement between the parties that plaintiff is entitled to rescind the contract.

Judgment in favor of plaintiff in the sum of $5,959.65, with interest from April 21, 1947.

The foregoing are the findings of fact and conclusions of law herein. If either party deems further findings or conclusions necessary, they may be submitted. Submit judgment in accordance herewith.