**DIXIE SAND & GRAVEL CORPORATION, Appellant,**

v.

**Pauline HOLLAND, Appellee.**

**No. 13107.**

United States Court of Appeals
Sixth Circuit.

May 1, 1958.

Philip J. Schneider, Cincinnati, Ohio (Herbert Shaffer, Waite, Schindel, Bayless & Schneider, Cincinnati, Ohio, Charles C. Moore and Frank W. Moore, Chattanooga, Tenn., on the brief), for appellant.

Ray L. Brock, Jr., Chattanooga, Tenn. (Dietzen, Graham, Dietzen & Brock, Chattanooga, Tenn., on the brief), for appellee.

Before McALLISTER, MILLER and STEWART, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellee, as the widow of the decedent George F. Holland, filed in the Office of the Deputy Commissioner, Bureau of Employees' Compensation, United States Department of Labor, administering the Longshoremen's and Harbor Workers' Compensation Act, her claim for compensation by reason of the death of her husband while in the employ of the appellant. Section 901 et seq., Title 33 U.S.C.A.

Holland was employed by the appellant as a clean-up man in the appellant's sand and gravel yards located on the banks of the Tennessee River, at Chattanooga, Tenn. His working hours were from 3:00 p. m. and continuing for eight or more hours a day. Appellant also had in its employ a night watchman whose duties were to make hourly rounds of the yard and of any barges that might be moored at the yard dock. On the night of November 23, 1954, Holland voluntarily told the night watchman that he would go with him when he made his eleven o'clock rounds and help check the barges before he left. While returning from the check, Holland slipped and fell between two barges into the river and drowned.

Appellant's answer interposed several defenses, including a denial that at the time of his death Holland was performing services growing out of and incidental to his employment, and stating affirmatively that the employee at the time of his death was not in maritime employment and was not performing any duty required by his employment.

Following a hearing, the Deputy Commissioner found the facts as above stated and made the additional findings that Holland's duties were entirely on land within the yard premises, that he had no duties on the barges, that he was not directed, authorized, or requested to accompany the watchman, and that the claim did not come within the provisions of the Longshoremen's and Harbor Workers' Compensation Act. Basing his

ruling on the foregoing findings, he ordered that the claim be rejected.

There was also uncontradicted testimony that on one previous occasion when a barge was in distress and needed pumping out, the night watchman called appellant's superintendent and asked permission to get Holland to help pump it out, and that such permission was given; that there was no authority in the night watchman to call on Holland for assistance on the barges and that he had only done so on the one occasion when permission had been given; that Holland would have implied authority to do what he could in case of an emergency; that on the night in question there had been a little shower and some wind; that the barges were in good shape when the night watchman made his ten o'clock rounds; that the night watchman found the barges tied up all right and it was not necessary to do anything about them. These facts were not included in the Deputy Commissioner's findings.

The appellee thereafter filed this action in the District Court to review the order of the Deputy Commissioner, as not in accordance with law, and prayed for a mandatory injunction directing the Deputy Commissioner to set aside the findings of fact and to make an order against the appellant awarding to the appellee the benefits to which she and her minor children were entitled under the Act. Section 921(b), Title 33 U.S.C.A.

The District Judge, on his review of the record, ruled that the findings of fact made by the Deputy Commissioner failed to cover the question of whether Holland was acting in the course of his employment, and "this court now decides that Holland was acting within the scope of his employment." He rejected other defenses relied upon by appellant, and held that the claim was within the coverage of the Act. He ruled that the order of the Deputy Commissioner was not in accordance with law and the facts and should be set aside, and directed the Deputy Commissioner to enter an order awarding compensation. The present appeal is from that judgment.

■ At the outset there is presented the issue whether Holland's death arose out of and in the course of his employment, which is a basic one in the case and which could be decisive. Since the appellant had other employees engaged in maritime employment, and since Holland's death admittedly occurred upon navigable waters of the United States, his widow was entitled to compensation under the Act if his death arose out of and in the course of his employment, whether or not he was engaged in "maritime employment." Sections 902(2), 903 (a), Title 33 U.S.C.A. Pennsylvania R. Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367.

■ If the Deputy Commissioner made a finding that Holland's death did not arise out of and in the course of his employment the scope of judicial review is sharply limited by the statutory provisions of the Longshoremen's Act, and the Administrative Procedure Act, Sections 919(a), 921(b), Title 33 U.S.C.A.; Sect. 1009(e), Title 5 U.S. C.A. If supported by the evidence and not inconsistent with the law, the Deputy Commissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. An opposite inference can not be substituted by a reviewing court because of a belief that the one chosen by the Deputy Commissioner is factually questionable. It matters not that the basic facts from which the Deputy Commissioner draws this inference are undisputed rather than controverted. Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 477–478, 67 S.Ct. 801, 91 L.Ed. 1028; O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508–509, 71 S.Ct. 470, 95 L.Ed. 483; Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 246, 62 S.Ct. 221, 86 L.Ed. 184; Hurley v. Lowe, 83 U.S.App. D.C. 123, 168 F.2d 553, 555, certiorari denied 334 U.S. 828, 68 S.Ct. 1338, 92 L.Ed. 1756; Wetzel v. Britton, 83 U.S. App.D.C. 327, 170 F.2d 285, 287; Kwasizur v. Cardillo, 3 Cir., 175 F.2d 235, 236, certiorari denied 338 U.S. 880, 70 S. Ct. 150, 94 L.Ed. 540.

■ The District Judge ruled that the Deputy Commissioner made no such finding. If that is correct, we have an entirely different question to consider, in that we are asked to review an agency ruling based on findings which omit a finding which is essential to the decision of this case. We can not substitute for this omission the finding of the District Judge that the accident arose out of and in the course of the employment. The Deputy Commissioner, not the Court, is to make such a finding. The District Court's function in such cases is to review the findings in the light of the principles hereinabove stated, not to make findings de novo. Ocean S.S. Co. of Savannah v. Lawson, 5 Cir., 68 F. 2d 55, 57. The District Court has no power to make its own findings de novo. Marshall v. Pletz, 317 U.S. 383, 388, 63 S.Ct. 284, 87 L.Ed. 348; Cardillo v. Liberty Mutual Ins. Co., supra, 330 U.S. 469, 478, 67 S.Ct. 801, 91 L.Ed. 1028.

It is contended, however, that since the basic facts are undisputed, the conclusions drawn therefrom by the Deputy Commissioner are actually mixed questions of law and fact which are not binding upon the reviewing court, which is authorized to draw its own conclusions from such undisputed basic facts. Ward v. Cardillo, 77 U.S.App.D.C. 343, 135 F. 2d 260, 261; Kraft Foods Co. v. C. I. R., 2 Cir., 232 F.2d 118, 122. Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 490, 57 S.Ct. 569, 81 L.Ed. 755. This Court has also so held. E. H. Sheldon & Co. v. Commissioner, 6 Cir., 214 F.2d 655, 658–659, and cases cited in support of the ruling. In discussing this question and in making a similar ruling the Court of Appeals for the First Circuit took occasion to remark, "There is a singular lack of unanimity on this point, not only between, but within, individual circuits," citing numerous cases as examples of the conflict. Texas Co. v. R. O'Brien & Co., 1 Cir., 242 F.2d 526, 529, Note 1.

Apparently, such a conflict exists in our own circuit. United States v. Cold Metal Process Co., 6 Cir., 164 F.2d 754, 755, certiorari denied 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742, rehearing denied, 334 U.S. 835, 68 S.Ct. 1343, 92 L. Ed. 1761; Rich v. Pappas, 6 Cir., 229 F.2d 308, 313. In our most recent ruling on this question in the Rich case we held that reasonable inferences drawn by the District Judge from uncontradicted facts were controlling on review unless clearly erroneous, citing in support of the ruling United States v. United States Gypsum Co., 333 U.S. 364, 394, 68 S.Ct. 525, 541, 92 L.Ed. 746. The Supreme Court there said, "In so far as this finding and others to which we shall refer are inferences drawn from documents or undisputed facts, heretofore described or set out, Rule 52(a) of the Rules of Civil Procedure [28 U.S.C.A.] is applicable." See also: Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 5 Cir., 137 F.2d 176, 180, affirmed 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949; Note of Advisory Committee on Rules for Civil Procedure contained in Proposed Amendments to Rules of Civil Procedure, Rule 52(a), October 1955. We think the ruling of the Supreme Court in the United States Gypsum Co. case, which has recently been followed by us in the Rich case, is controlling on the issue.

With respect to the present particular type of administrative action, we think the ruling of the Supreme Court in Cardillo v. Liberty Mutual Ins. Co., supra, 330 U.S. 469, 478, 67 S.Ct. 801, 807, 91 L. Ed. 1028, expressly forecloses the right of the District Court or this Court to make our own inferences or conclusions from basic undisputed facts. The Court there said, "It matters not that the basic facts from which the Deputy Commissioner draws this inference are undisputed rather than controverted. * * * It is likewise immaterial that the facts permit the drawing of diverse inferences. The Deputy Commissioner *alone* is charged with the duty of *initially* selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Emphasis added.)

Accordingly, our problem in this case is to determine if the Deputy Commis-

sioner made a finding that Holland's death did not arise out of and in the course of his employment, and if we determine such a finding was made, to review it under the well established formula stated and used in the Cardillo case, supra. If we determine that no finding was made by the Deputy Commissioner on this vital issue, the action should be remanded to the District Court with instructions that it remand the action to the Deputy Commissioner for a finding by him based on all the evidence whether Holland's death arose out of and in the course of his employment within the meaning of the Act. Ocean S.S. Co. of Savannah v. Lawson, supra; Vendemia v. Cristaldi, 95 U.S.App.D.C. 230, 221 F.2d 103, 106; Howard v. Monahan, D.C. S.D.Tex., 33 F.2d 220; Morand Bros. Beverage Co. v. N. L. R. B., 7 Cir., 190 F.2d 576, 584; American Broadcasting Co. v. Federal Communications Commission, 85 U.S.App.D.C. 343, 179 F.2d 437, 445; Monrote v. Britton, 99 U.S.App.D. C. 128, 237 F.2d 756, 759.

The "ultimate finding" of the Deputy Commissioner is "that the claim filed by the dependents does not come within the provisions of the Longshoremen's and Harbor Workers' Compensation Act." He also included among his general findings a specific finding that Holland's duties were entirely on land within the yard premises, which the District Judge considered erroneous and refused to accept. Neither of these two findings is an express finding that Holland's death did not arise out of and in the course of his employment. It is contended that it should not even be construed as an implied finding to that effect.

It is possible and in fact probable that the Deputy Commissioner's "ultimate finding" is a conclusion based upon the specific finding that Holland's duties were entirely on land within the yard premises. Appellant has, throughout this litigation, including its argument on this appeal, taken the position that if Holland's duties were entirely on land the Compensation Act did not apply to him. The Deputy Commissioner in

making his ultimate finding may have adopted that view of the law.

Such a conclusion, however, is an incorrect one. If we accept the ruling of the District Judge that the specific finding is an erroneous one which must be rejected, there is no basis left for the Deputy Commissioner's conclusion. Even if the specific finding is allowed to stand, a conclusion based on it is erroneous as a matter of law. The contention that the injured employee must be a maritime employee in order to come within the provisions of the Act was rejected by the Supreme Court in Pennsylvania R. Co. v. O'Rourke, supra, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367. Sections 902(4), 904(a), Title 33 U.S.C.A., impose liability upon an employer, any of whose employees are employed in maritime employment, if the accidental injury or death is otherwise covered by the Act. The necessary requirements under Sections 902(2) and 903(a), Title 33 U.S. C.A., are that the injury or death arise out of and in the course of employment and that it occur upon the navigable waters of the United States, including any dry dock. Since it is undisputed in the present case that the appellant had employees engaged in maritime employment and that the accident resulting in Holland's death occurred upon the navigable waters of the United States, the only issue before us with respect to coverage under the Act is whether the accident arose out of and in the course of Holland's employment.

■ We are unable to say with any degree of certainty that the Deputy Commissioner's finding that "the claim filed by the dependents does not come within the provisions of the Longshoremen's and Harbor Workers' Compensation Act" is in fact an independent finding that Holland's death did not arise out of and in the course of his employment. We are unable to adequately review the ruling in this case without an express finding by the Deputy Commissioner on that issue. The orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be

clearly disclosed and adequately sustained. Securities and Exchange Commission v. Chenery Corporation, 318 U.S. 80, 94–95, 63 S.Ct. 454, 87 L.Ed. 626. For that reason, the case will be sent back to the Deputy Commissioner for an express finding by him on that issue, with recognition by him in doing so that the Compensation Act is applicable to an employer, any of whose employees are employed in maritime employment, if the accidental injury or death is otherwise covered by the Act.

Appellee seeks to have the judgment affirmed on the ground of estoppel by judgment. Before filing the present action, she filed a suit for damages in the state court. The defendant there, who is the appellant in this action, filed two pleas in abatement, (1) that it was at the time of the accident operating under the Workmen's Compensation Law of Tennessee, T.C.A. § 50–901 et seq., which constituted a bar to a common law action for damages, and (2) that at the time of the accident, Holland was an employee, that both the employer and the employee were operating under the Workmen's Compensation Law of Tennessee, that Holland's death arose out of and in the course of his employment entitling the claimant to the benefits provided by that law, that the claimant filed a claim for such benefits and had received compensation, and had thereby waived any right to maintain any common law action for damage. The Judge sustained "defendant's plea in abatement" and dismissed the action. The record does not indicate which of the two pleas he referred to. The District Judge held that since the plea in abatement was sustained, the appellant could not come into the District Court and maintain that the death of Holland did not arise out of and in the course of his employment, and that even if the judgment in the state court was not res judicata, appellant could not in this case assume a contrary position to the position taken in the state court.

Clearly, the state court judgment does not constitute res judicata. Although the parties were the same, the

causes of action were different. There was no decision upon the merits. Swift v. McPherson, 232 U.S. 51, 34 S.Ct. 239, 58 L.Ed. 499. But there may be estoppel by judgment, as distinguished from res judicata even though the causes of action are different. If the precise question here involved was raised and determined adversely to the appellant in that suit, it would operate as an estoppel by judgment in the present suit. But if the judgment in the former suit could be based on an issue not involved in the later suit and it is not made to appear on which of the several issues the judgment was based, estoppel by judgment does not arise. Kelliher v. Stone & Webster, 5 Cir., 75 F.2d 331; Russell v. Place, 4 Otto 606, 94 U.S. 606, 24 L.Ed. 214; De Sollar v. Hanscome, 158 U.S. 216, 221, 15 S.Ct. 816, 39 L.Ed. 956. In the present case the judgment of dismissal could properly rest upon the first plea that the appellant was operating under the Workmen's Compensation Law of Tennessee, which in itself was a bar to the common law action. It was not necessary that there be any adjudication on the issue of whether Holland's death arose out of and in the course of his employment as claimed in the second plea. Estoppel by judgment is not shown by the record before us.

With respect to the effect of the second plea in abatement in the prior state court suit, the allegation therein that Holland's death arose out of and in the course of his employment is not binding on the appellant in this case, even though contradictory to its present contention. Under Rule 8(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A., inconsistent defenses are permitted even in the same action. Kentucky Home Mutual Life Ins. Co. v. Duling, 6 Cir., 190 F.2d 797, 801. Allegations in pleadings in other actions are admissible in evidence as admissions, but are not conclusive, and should be considered in connection with any other evidence which may be offered in explanation. Anderson v. Tway, 6 Cir., 143 F.2d 95, 100, certiorari denied 324 U.S. 861, 65 S.Ct.

865, 89 L.Ed. 1418; Fuller v. King, 6 Cir., 204 F.2d 586, 590; Frank R. Jelleff, Inc., v. Braden, 98 U.S.App.D.C. 180, 233 F.2d 671, 676; Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc., 2 Cir., 32 F.2d 195, 198, certiorari denied 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629; Tiana Corp. v. Hartley, D.C. S.D.N.Y., 99 F.Supp. 670, 672.

The judgment of the District Court is vacated, and the action remanded to the District Court with instructions that it remand the action to the Deputy Commissioner for a finding by him based on all the evidence whether the decedent's death arose out of and in the course of his employment within the meaning of the Act, and for further proceedings thereafter by the District Court in accordance with the views expressed herein.

McALLISTER, Circuit Judge (dissenting).

I regret that I am unable to concur in the views of my colleagues. The only issue in this case is whether the death of Mr. Holland arose out of, and in the course of, his employment with appellant company. In my opinion, the facts clearly show that his death did arise out of, and in the course of his employment.

George F. Holland met his death on navigable waters during working hours, while inspecting his employer's barges. The night on which his death occurred was stormy. Mr. Bowman, the night watchman, custodian, and general caretaker of the barges, thought that the wind was so severe that it was necessary to go out on the barges and check on them. He and Holland, who was the night clean-up man, thought that some of the barges might have come loose.

When, on a prior occasion, Bowman had called the superintendent and told him that a barge was in distress, the superintendent had told him to get Holland and have him help in pumping the barge out—and Holland had helped Bowman in that situation. It was a hazardous and dangerous matter for one man alone to go out on the outside barge,

take the pump down, and do any work at night. At least two men were needed in such a situation. Bowman had authority to do whatever he could about the barges, in case of an emergency.

Just before they made the last round that night, Holland talked with Bowman. At that time, the wind had risen. Holland then asked Bowman if the barges were in good shape. When Bowman told him they were all right on his last round—before the wind had come up—Holland stated that he would go with him when he made his eleven o'clock round and would help him check the barges before he, Holland, left for the night. Holland indicated to Bowman that he thought he might have some trouble out there on the barges on that particular round. Holland then waited for Bowman while the latter went to do some work "on the river" and when Bowman returned, both men went down river to the barges. Bowman stated that the only time Holland had gone with him before was when he called him to help pump a barge. There were only two men, at night, on appellant's premises. Holland was the only man that Bowman could call upon for help, although he did not request Holland to help him that night. But he did not decline such help.

Holland and Bowman had made their way to the outermost barge before Holland, on their return to shore, slipped between the barges and fell into the river.

At the time of his death, Holland was making the round with Bowman to see if the barges were securely fastened.

The superintendent testified that he considered Holland a loyal and faithful employee of appellant company, and said that it was characteristic of Holland to be out on the barges trying to help Bowman at the time he met his death.

In my view, the foregoing evidence shows that decedent's death arose out of, and during the course of his employment.

In this case, we start with a presumption—a statutory presumption—that this

claim comes within the provisions of the Act. And that presumption continues in the absence of substantial evidence that the claim does not come within the Act. Title 33 U.S.C.A., § 920. If the injury occurs on the employer's premises during the employee's working hours, there is a presumption that the injury arose out of the employment, unless the contrary is shown. Travelers Insurance Co. v. Cardillo, 78 U.S.App.D.C. 255, 140 F.2d 10. The presumption shifts the burden of going forward with the evidence to show that the injury did not arise out of the employment. Liberty Mutual Ins. Co. v. Donovan, D.C., 124 F.Supp. 320.

The Act must be liberally construed in favor of the injured employee. If there is any doubt, it must be resolved in favor of the injured employee or his family. General Accident, Fire & Life Assur. Corp. v. Crowell, 5 Cir., 76 F.2d 341; Southern Pacific Co. v. Sheppeard, 5 Cir., 112 F.2d 147.

An employee's injury may be held to have arisen out of his employment although his conduct was not within the scope of his authority, nor strictly within the line of his duty. It is sufficient if it. was reasonably related to the service he was employed to render and was, in good faith, undertaken in furtherance of his employer's business. In the case of Ex parte Terry, 211 Ala. 418, 100 So. 768, 769, the court said:

"The effect of these and other well-considered cases is to firmly establish the principle, based of course upon the theory of a liberal rather than a strict or narrow construction, that an employé's injury may be properly held to have arisen out of his employment notwithstanding that the act or conduct of the employé to which the injury is proximately referable was not within the scope of his authority nor strictly within the line of his duty, provided it was reasonably related to the service he was employed to render and was in good faith done or undertaken in furtherance of the employer's business; and notwithstanding, al-

so, that the injury in question was not one of the anticipated risks of the service."

In Waters v. William J. Taylor Co., 218 N.Y. 248, 251, 112 N.E. 727, 728, L.R.A.1917A, 347, the Court of Appeals said:

"[The Workmen's Compensation Law, McKinney's Consol.Laws, c. 67] is framed on broad principles for the protection of the workman. Relief under it, generally speaking, is not based on the negligence of the employer, or limited to the absence of negligence on the part of the employe. It rests on the economic and humanitarian principles that compensation should be given at the expense of the business to the employe or his representatives for earning capacity destroyed by an accident in the course of or connected with his work, and this not only for his own benefit, but for the benefit of the state, which otherwise might be charged with his support. This purpose ought not to be defeated by placing too narrow a limit upon the nature of the acts which will be regarded as pertaining to his employment.

"Of course what we thus say is to be read in the light of the facts presented on this appeal. There is no trouble in outlining a case where an employe, even with the laudable purpose of helping another, might go so far from his employment and become so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment."

Nearly all the cases in the federal courts before O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 471, 95 L.Ed. 483, held, or at least, intimated that there must be some causal relation shown between the nature of the employment of the injured person, and the accident. In the lower court in that case, the Court of Appeals of the

Ninth Circuit, in reversing an award to an employee under the Longshoremen's and Harbor Workers' Act, placed its decision on the ground that the conduct in which the deceased employee was engaged at the time he met his death was entirely disconnected from any use for which certain recreational premises were provided, and which the employee was using at the time, and, therefore, did not occur in the course of decedent's employment. Brown-Pacific-Maxon, Inc. v. O'Leary, 9 Cir., 182 F.2d 772.

On appeal, the Supreme Court reversed the Court of Appeals and affirmed the award of the Deputy Commissioner. The more detailed statement of facts of the case discloses that an employee of the corporation in question met his death by drowning in attempting to rescue four other employees, who were swimming near a reef off the coast of Guam. The employer maintained a recreation center for its employees on the shore of the island where a swimming pool, camp grounds, and a club were located. The recreation center was open to the employees every day, including Sunday. Half a mile at sea and parallel with the shoreline of the camp was the reef in question. At the swimming pool there was a huge sign posted prohibiting swimming in the channel, and permitting no one on the reef. One of the employees who had been swimming on the shore was about to leave the pool when he heard someone on the reef calling for help. He went to the rescue of the person, and in his attempt to save the life of the person on the reef, lost his own life in the forbidden area of the dangerous current. In its opinion, the Supreme Court said:

"Workmen's compensation is not confined by common-law conceptions of scope of employment. * * * The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Thom v. Sinclair, [1917] A.C. 127, 142. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer.

All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose."

Of course, the deceased, in the instant case, was not employed to inspect barges. But he was inspecting them for the benefit of his employer at a time when both the foreman and the deceased considered that there might be an emergency situation because of the rising of the wind along the river; and he met his death while working on his employer's behalf. A finding that Mr. Holland's death did not arise out of, and in the course of his employment would certainly leave this court with the definite and firm conviction that a mistake was committed and that, therefore, the finding was clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.

Although the Deputy Commissioner found that Mr. Holland was working as an employee of appellant company at the time of his death, and that he met his death as a result of falling between appellant's barges while checking to see if they were secure in the dead of night, the Deputy Commissioner did not make a finding that the death of Mr. Holland arose out of, and in the course of his employment. It is, therefore, proposed to remand the case to the Deputy Commissioner for a finding as to whether or not the death of Mr. Holland arose out of, and in the course of his employment.

If the proofs clearly disclose that the accident arose out of and during the course of the employment, and a finding to the contrary by the Deputy Commissioner would be clearly erroneous, there would seem to be no reason to remand the case to the Deputy Commissioner. In this regard, I would think that the same rule would apply as where a district court had omitted to make findings in a case where the facts were not disputed. In Yanish v. Barber, 9 Cir., 232 F.2d 939, 947, the court said:

"A recognized exception to the general rule, requiring a case to be sent back for a lack of findings, is

where ' * * * the record considered as a whole does not present a genuine issue as to any material fact' * * * in view of the lack of dispute or contradiction in the record, this case should not be remanded for further findings. * * * See Keehn v. Alaska Industrial Board, 9 Cir., 1956, 230 F.2d 712, 714, where, though the findings were 'not artful,' the alternative of sending the case back to the District Court for more detailed findings, was characterized as 'an idle act, since we think the court clearly indicated the basis for its decision.' "

It is said that the Deputy Commissioner may draw inferences from the basic facts and may find that the death of Mr. Holland did not arise out of, and in the course of his employment; and if he makes such a finding, it is implied that such a finding is conclusive. In this regard, United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, is cited in support of the rule that reasonable inferences drawn by a trial court from uncontradicted facts are controlling on review unless clearly erroneous. This case does not, however, seem to support the proposition that where the basic facts are undisputed, the reviewing court is bound by the inferences drawn by the trial court—or, in other words, that since the facts in this case are undisputed, we would here be bound by the conclusions of the Deputy Commissioner. Whether the reviewing court is so bound would seem to depend upon the nature of the basic facts.

In the Gypsum case, the documentary evidence showed that a group of competitors entered into a series of separate but similar agreements with competitors or others. It was held that, in such a case, a strong inference arose that such agreements were the result of concerted action. The Supreme Court said that although the authors of such documents denied that they had acted in concert and although the trial court, having the opportunity to appraise the credibility of such witnesses, found that there was no

concert of action, nevertheless, the Supreme Court was left with the definite and firm conviction that a mistake had been committed by the trier of facts and that its findings were, therefore, clearly erroneous. This determination seems not in conflict with the views set forth herein.

However, the expression on the subject that best applies to the instant case appears to be that stated by Mr. Justice Frankfurter in Baumgartner v. United States, 322 U.S. 665, 670, 671, 64 S.Ct. 1240, 1243, 88 L.Ed. 1525, when he said:

"The conclusiveness of a 'finding of fact' depends on the nature of the materials on which the finding is based. The finding even of a so-called 'subsidiary fact' may be a more or less difficult process varying according to the simplicity or subtlety of the type of 'fact' in controversy. Finding so-called ultimate 'facts' more clearly implies the aplication of standards of law. And so the 'findings of fact' even if made by two courts may go beyond the determination that should not be set aside here. Though labeled 'finding of fact', it may involve the very basis on which judgment of fallible evidence is to be made. Thus, the conclusion that may appropriately be drawn from the whole mass of evidence is not always the ascertainment of the kind of 'fact' that precludes consideration by this Court."

Thus it appears that the conclusion of ultimate facts is for the reviewing court, where the trial court has merely found the basic facts. Moreover, insofar as the so-called "ultimate fact" is simply the result reached by processes of legal reasoning from, or the interpretation of the legal significance of, the evidentiary facts, it is subject to review free of the restraining impact of the so-called "clearly erroneous" rules, Lehmann v. Acheson, 3 Cir., 206 F.2d 592, 594; Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217, 219.

In Kuhn v. Princess Lida of Thurn & Taxis, 3 Cir., 119 F.2d 704, 705, the court said:

"The appellee reminds us that we are not at liberty to disturb findings of fact made by the trial court unless they are unsupported by evidence or are otherwise clearly erroneous. Rule 52(a), 28 U.S.C.A. following section 723c. The reason for the rule rests in large part upon the fact that the trial judge who hears the witnesses testify and observes their demeanor upon the stand is better qualified to appraise the credibility of their testimony and to resolve the conflicts therein. So long, therefore, as a finding of fact is supported by evidence and is not clearly erroneous, it is to be accepted on appeal as verity.

"The rule does not operate, however, to entrench with like finality the inferences or conclusions drawn by the trial court from its fact findings. And so, while accepting the facts competently found by the trial court as correct, an appellate court remains free to draw the ultimate inferences and conclusions which, in its opinion, the findings reasonably induce. * * * Where the evidentiary facts are not in conflict or dispute, the conclusions to be drawn therefrom are for the appellate court upon review of the trial court's action."

"The findings of the District Judge in this regard are in effect findings *as to the effect of these transactions* rather than findings which resolve disputed facts. Hence we do not find ourselves *obstructed by the traditional rule not to disturb findings of fact of the trial court.* We are therefore free to make our own determination as to the legal conclusion to be drawn." Brown v. Cowden Livestock Co., 9 Cir., 187 F.2d 1015, 1018. (Emphasis supplied.)

"Appellees argue that we are bound by the foregoing findings, since the record does not show that they are clearly erroneous. We do not think so. When a finding is essentially one dealing *with the effect of certain * * * events,* rather than a finding which resolves disputed facts, an appellate court is not bound by the rule that findings shall not be set aside, unless clearly erroneous, but is free to draw its own conclusions." Stevenot v. Norberg, 9 Cir., 210 F.2d 615, 619. (Emphasis supplied.)

"[If] all subsidiary facts have been already found, or stand admitted, there can be no need of sending the case back. Our acceptance of the assessor's special findings here gives us a record free of dispute except as to the ultimate factual inference to be drawn, and hence leaves us as fully able to draw it as would be the trial court. *The test for reversibility does not require us to return the case for a new finding.*" Texas Company v. R. O'Brien & Co., 1 Cir., 242 F.2d 526, 529.

To me, the undisputed facts clearly show that the death of Mr. Holland arose out of, and in the course of his employment. Were there any doubt, the statutory presumption would resolve it in favor of the widow and children. Since there have been findings by the Deputy Commissioner as to the basic facts—that Mr. Holland was working as an employee of appellant at the time of his death and that he met his death as a result of falling between appellant's barges while engaged in inspecting them—there remains for determination only the effect of such findings—whether his death arose out of, and in the course of his employment—and this court is free to make its own determination as to this legal conclusion. Since, in my opinion, it clearly appears that Mr. Holland's death did arise out of, and in the course of his employment, I am of the view that instead of remanding the case to the Deputy Commissioner for a determination of this issue, we should, in effect, make that determination here, and, accordingly, affirm the judgment of the district court.